**John L. THOMPSON, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (USF & G COMPANY and Craig Welding & Equipment Rental), Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 7, 2002.

Decided June 21, 2002.

James L. Gillespie, Jr., Pittsburgh, for petitioner.

C.S. Fossee, Cranberry Township, for respondents.

John J. Bagnato, Johnstown, for amicus curiae, Bethenergy Mines, Inc.

Before LEADBETTER, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

This case is before us on remand from our Supreme Court. We are now called upon to address an issue which we did not reach during our initial consideration of the case, to wit, whether an employer which has paid workers' compensation benefits has subrogation rights in a third party tort recovery even though the employee and tortfeasor have designated the settlement funds as solely attributable to pain and suffering. The history of this case has been set forth at length by Justice Castille in the opinion of the court, *Thompson v. Workers' Compensation Appeal Board. (USF & G Co. and Craig Welding Equipment Rental)*, 566 Pa. 420, 420–26, 781 A.2d 1146, 1146–50 (2001), and will be repeated here only in brief outline.

In August of 1988, John L. Thompson sustained serious injuries to his skull, jaw, ribs and teeth when the tip-boom of an Omni 60 aerial platform collapsed. As a result of this accident, employer, Craig Welding & Equipment Rental, and its insurance carrier, USF & G, paid Thompson workers' compensation in the amount of $8,673.68 and medical benefits in the amount of $97,070.95, for a total of $105,744.63. Thompson and his wife, Rose M. Thompson, filed a product liability action in October 1988 against the manufacturers, suppliers and owners of the platform. Between the time of the accident and the filing of suit, employer conducted an inspection and tear-down of the Omni 60, which uncovered problems with bolts designed to connect the tip–boom to the platform. Present at the inspection were representatives of USF & G, the manufacturer and Mr. Thompson. After the inspection, William Craig, owner of Craig Welding, took possession of the bolts. Unfortunately, by the time of trial he had inadvertently lost them.

On November 18, 1993, the third day of trial, the product liability defendants filed a motion in limine, requesting that Thompson be precluded from presenting evidence of any medical or indemnity benefits paid by USF & G, as a sanction for Craig's inability to produce the bolts at trial. USF & G and employer were not parties to the product liability action; however, at the request of common pleas, they were present when the motion in limine was argued and granted. The same day, Thompson and his wife entered into a settlement agreement in the product liability action whereby third-party defendants Doering Equipment, Inc. and Pettibone Corporation, each contributed $150,000, for a total of $300,000. The parties structured the settlement in a way that was obviously intended to defeat employer's subrogation right. Specifically, $200,000 was apportioned to Thompson and designated as compensation for pain and suffering, and $100,000 was apportioned to Rose M. Thompson for loss of consortium. On February 2, 1994, common pleas entered an order approving the settlement, including the parties' designation and allocation of the settlement funds.

In April of 1994, employer and USF & G filed a petition to suspend compensation to Thompson and to enforce their subrogation lien pursuant to Section 319 of the Workers' Compensation Act (Act).[1] The Workers' Compensation Judge (WCJ) granted the petition. The Workers' Compensation Appeal Board (Board) affirmed. We reversed, concluding that employer and USF & G were barred from enforcing their statutory subrogation right on "equitable grounds," due to the spoliation of evidence. The Supreme Court reversed our decision, holding that an employer's subrogation right under Section 319 is absolute, and not subject to *ad hoc* equitable exceptions.[2] *Thompson,* 566 Pa. at 430–33, 781 A.2d at 1152–54 (citing *Winfree v. Philadelphia Electric Co.,* 520 Pa. 392, 554 A.2d 485 (1989)). The court remanded the matter to us with direction to consider whether employer's subrogation right is nonetheless barred because the settlement funds were designated as compensation only for Thompson's pain and suffering and his wife's loss of consortium, rather than for medical bills and/or lost wages.

The parties advised us at oral argument on remand that we need not address the issue regarding loss of consortium. As it is now clear that $105,744.63 is the full extent of the compensation paid, Thompson's portion of the recovery is more than sufficient to satisfy the lien and employer has abandoned any claim against the recovery attributed to Thompson's wife. Accordingly, we turn to the question whether a settlement fund attributed solely to pain and suffering is subject to subrogation.

In *Bumbarger v. Bumbarger,* 190 Pa.Super. 571, 155 A.2d 216 (1959), our Superior Court specifically addressed the issue of whether an employer has a right of subrogation over settlement proceeds designated as compensation for pain and suffering. The court held as follows:

> The subrogation rights of the employer or insurance carrier encompass amounts which are required to be paid under the law. Certainly the claim for subrogation cannot be modified by the claimant and the third party by arbitrarily apportioning the elements of damage for his inju-

1. Act of June 2, 1915, P.L. § 736, *as amended,* 77 P.S. § 671.

2. The court held open the possibility of some equitable remedy where there has been proof of deliberate bad faith conduct by the employer. *Thompson,* 566 Pa. at 432–33, 781 A.2d at 1154. No such allegation was made in the present case.

ries claimed by the employe against the wrongdoer. Consequently, where, as here, the employer was not a party to the suit or settlement with the third party and did not otherwise foreclose his right to subrogation, the employe and the third party cannot deprive the employer of his full subrogation right by unilaterally designating a portion of the recovery as damages for pain and suffering. Designation of the type of damage recovered by the settlement is not necessarily conclusive against the employer's right to subrogation for compensation paid by him under the Act.

*Id.* at 218–19 [citations omitted]. We have since cited *Bumbarger* for the proposition that "subrogation rights will not be affected by the way in which the claimant and third-party tortfeasor, or the fact-finder in their action, characterize the nature of the third-party recovery." *Cullen v. Pennsylvania Property and Casualty Ins. Guaranty Assoc.,* 760 A.2d 1198, 1201 (Pa. Cmwlth.2000).

We do not read *Darr Construction Company v. Workmen's Compensation Appeal Board (Walker),* 552 Pa. 400, 715 A.2d 1075 (1998) as mandating a contrary result. In *Darr,* our Supreme Court held that an employer has no subrogation interest in the loss of consortium action by the claimant's spouse against the third party tortfeasor.[3] The court explained first that the spouse's claim for loss of consortium is a separate and distinct cause of action from the claimant's suit for bodily injury. Second, the language of Section 319 specifically provides that employer is subrogated to the right of the employee, not the right of his spouse. Finally, the doctrine of subrogation requires that there be an equitability between the obligation of the compensation payor and that of the tortfeasor payor.

"[T]he obligations satisfied by the third party loss of consortium recovery are not equatable with the obligations satisfied by Claimants' workers' compensation benefits. The former compensates Claimants' wives for their loss of their husbands' companionship and services while the latter compensates Claimants for their bodily injury."

*Darr,* 552 Pa. at 409, 715 A.2d at 1080. Each element of the reasoning in *Darr* leads to the conclusion that the claimant's recovery in this case is subject to subrogation. Although the tort suit and the compensation claim operate differently—one being a statutory form of absolute liability mandating a fixed payment obligation, the other a common law remedy under which a judge or jury faces a range of options as to both liability and damages—they are simply alternative legal mechanisms designed to compensate the claimant himself for his bodily injury. Thus, "the fund to which [employer] seeks subrogation was for the same compensable injury for which he is liable under the Act,"[4] and the remedies are equatable within the meaning of *Darr.*

In addition, we find this result most consistent with public policy considerations. The employer is not a party to the tort suit. The structure of the tort settlement is in the sole control of the claimant and the tortfeasor unless, as frequently occurs, they reach out to employer and

**3.** We note that in *Darr* our Supreme Court appeared to hold that no subrogation right may be asserted against a spouse's recovery for loss of consortium, even under circumstances suggesting abuse, *i.e.,* that the allocation was made for the purpose of subverting those subrogation rights. The *Thompson* court, in its discussion of the question on remand, appeared to retreat from such an absolute rule. *Thompson,* 566 Pa. at 434, 781 A.2d at 1155. Since the consortium issue is no longer before us, we need not resolve this apparent discrepancy.

**4.** *Dale Mfg. Co. v. Bressi,* 491 Pa. 493, 497, 421 A.2d 653, 655 (1980) (quoting *Dale Mfg. Co. v. Workmen's Comp. Appeal Bd.,* 34 Pa. Cmwlth. 31, 382 A.2d 1256, 1259 (1978)).

obtain a compromise of the subrogation lien as part of an overall settlement. Presumably, if claimant were to obtain a full recovery in the tort action, he would be entitled to compensation for the full amount of his past and future lost wages (not just the 66–2/3% paid by employer) and medical expenses, as well as his pain and suffering, loss of life's pleasures, etc. Such a recovery would be ample both to satisfy employer's subrogation lien and to compensate claimant for his intangible losses. If claimant and the tortfeasor choose to settle the case, it is sound policy to encourage them to bring employer into the process so that a settlement would reflect a genuine compromise of the rights of all interested parties. For the claimant and tortfeasor to settle their suit on the basis that the tortfeasor pays only for claimant's pain and suffering is not a genuine compromise but merely "a transparent effort to defeat appellants' subrogation interest." *Thompson v. Workers' Comp. Appeal Bd.*, 566 Pa. 420, 434, 781 A.2d 1146, 1155 (2001). To abandon the long settled precedent of *Bumbarger* and adopt claimant's argument that simply by characterizing a tort recovery as solely for pain and suffering he can deprive his employer of its absolute statutory right to subrogation would encourage such behavior in derogation of the clear statutory scheme. We will not adopt such a rule.

### ORDER

AND NOW, this 21st day of June, 2002, the order of the Workers' Compensation Appeal Board in the above captioned matter is AFFIRMED insofar as it awards subrogation against the recovery in favor of John L. Thompson, and VACATED insofar as it awards subrogation against the recovery in favor of Rose Thompson.