**Debbie GILLETTE, Individually and as Administratrix of the Estate of John Gillette, Deceased**

v.

**Catherine WURST, as Parent and Guardian of Andrew Wurst, a Minor, Jerome J. Wurst and Catherine Wurst, and J.J. Wurst Landscape Contractor, Inc., Jacob Tury, a Minor, by and through his Parents and Legal Guardians, Joe Tury and Noreen Tury, and Joe Tury and Noreen Tury, Individually**

v.

**Jerome Wurst and Catherine Wurst**

v.

**Utica National Insurance Group and General McLane School District, Appellants**

Superior Court of Pennsylvania.

Argued Nov. 17, 2004.

Filed Jan. 24, 2005.

Reargument Denied March 31, 2005.

John McCandless, Erie, for appellants.

Charles V. Longo, Cleveland, OH, for Gillette, appellees.

Douglas J. Stipanovich, Pittsburgh, for Wurst, C. and J.J. Wurst Landscape, appellees.

BEFORE: FORD ELLIOTT, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this appeal, we consider whether the recipient of settlement proceeds under Pennsylvania's Wrongful Death Act may disclaim her intestate share of those proceeds when her disclaimer effectively prevents satisfaction of a subrogation lien by an insurance carrier. Intervenors Utica National Insurance Group and General McLane School District (Utica) contend that such a disclaimer contravenes provisions of the Worker's Compensation Act that allow enforcement of a lien to offset benefits paid. We hold that neither the Wrongful Death Act nor the Workers' Compensation Act prevents a beneficiary's disclaimer of an intestate interest in the proceeds of a wrongful death action so long as that disclaimer is carried out in accordance with the intestacy provisions of Pennsylvania's Decedents, Estate and Fiduciaries Code (DEF Code).

¶ 2 Utica appeals an order of the Court of Common Pleas approving a plan of settlement and distribution of the proceeds of a Wrongful Death action commenced by Debbie Gillette individually and as Administratrix of the Estate of her husband, John Gillette (Husband), following Husband's death while acting in the course and scope of his employment. Husband was employed as a teacher at Parker Middle School in Edinboro, Erie County. While acting as a chaperone at an eighth grade graduation dinner dance, Husband was shot and killed by defendant Andrew Furst, one of the students attending the dance. Furst also shot fellow student Jacob Tury. Tury sustained non-permanent injuries and, like Debbie Gillette, com-

menced an action against Wurst and his parents, seeking compensation. The trial court consolidated the two actions and, ultimately, Tury and Gillette agreed jointly with the Wursts to settle their respective actions upon payment on the Wursts' behalf of the $300,000 limit of their homeowners' insurance coverage.

¶ 3 Under the proposed settlement, Debbie Gillette was to receive $288,000, with the remainder payable to Jacob Tury. The Wrongful Death Act, pursuant to which Gillette obtained her recovery, provides that "damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy[.]" 42 Pa.C.S. § 8301(b). Following deduction of counsel fees, intestate succession, as prescribed by the DEF Code, would have provided payment to Debbie Gillette of a spousal share of $109,493.77, with the remainder to be divided in approximately equal portions between the children, $26,497.93 each to Abby Gillette and Brian Gillette, and $26,497.92 to Matthew Gillette. See 20 Pa.C.S. § 2102. The Gillettes' plan of distribution differs markedly, however, from that described by this section. Under the Gillette's proposal, to which all parties to the Wrongful Death action agreed, Debbie Gillette retained only $12,000 for payment of Husband's funeral expenses, and disclaimed her spousal share in favor of her children. The three children, all of whom had attained majority, agreed to distribution of the remaining sum principally to daughter Abby Gillette ($146,987.55), with $15,000 payable to each of the two sons.

¶ 4 On October 15, 2003, the parties to the consolidated action filed a Petition for Approval of Wrongful Death Settlement and Distribution and, on December 17, 2003, an Amended Petition. On that same date, Utica filed, for the first time, a Petition to Intervene, asserting a right to subrogation for fatal claim benefits of $167,934 it had paid on Husband's behalf (294 weeks at $561 per week plus $3000 in burial expenses). The trial court, the Honorable John A. Bozza, granted intervention but found no merit in Utica's challenge. Although Judge Bozza recognized the scheme of intestate distribution specified by the Wrongful Death Act, he concluded that "[t]here is nothing in the law that precludes all of those entitled to recover under the Wrongful Death Statute from agreeing on a different manner of distribution." Trial Court Memorandum, 1/27/04, at 3. The court reasoned that the DEF Code expressly permits persons in the line of intestate succession to disclaim their interests in favor of others, therefore validating Debbie Gillette's disclaimer under the Wrongful Death Act. Trial Court Opinion, 4/5/04, at 3–4. The court reasoned further that it lacked jurisdiction to rule on the validity of worker's compensation subrogation claims such as that raised by Utica. Accordingly, the court granted the parties' Amended Petition and approved the proposed distribution notwithstanding Debbie Gillette's disclaimer in favor of her adult children. Utica now files this appeal, raising the following questions for our review:

A. Whether the [trial] court erred in approving the amended petition for approval of wrongful death settlement and distribution as the distribution was inconsistent with the Pennsylvania Wrongful Death and Intestacy statutes[?]

B. Whether the [trial] court had discretion to permit the distribution of the settlement proceeds contrary to the Wrongful Death and Intestacy statutes[?]

C. Whether the [trial] court erred in approving the Amended Petition for

Approval of Wrongful Settlement and Distribution, where the clear intention of the petition was to avoid the statutory subrogation interest held by the intervenors[?]

Brief for Appellant at 4.

¶ 5 The Appellees have more concisely characterized the underlying issues in two questions, as follow:

I.     Whether the trial court abused its discretion in approving Appellee, Debbie Gillette's Amended Petition for Approval of the Wrongful Death Settlement and Distribution, where Plaintiff waived her right to certain benefits allowed under 20 Pa.C.S. § 6201, when all the remaining beneficiaries were in agreement with the settlement distribution[?]

II.    Whether the trial court erred in finding that it did not have jurisdiction to determine the subrogation rights of the workers' compensation carrier, Utica National Insurance Group when the procedures for asserting such rights are set forth in the Pennsylvania Workers' Compensation Act.

Brief for Appellee Debbie Gillette at 4. Because we conclude that the Gillettes' brief more effectively focuses the issues for our disposition, we will consider Utica's arguments as they relate to each of these two questions.

¶ 6 The trial court entered its order in this case pursuant to Civil Rule 2206, which provides for judicial review of proposed settlements in wrongful death actions. Rule 2206 provides, in pertinent part, as follows:

**Rule 2206. Settlement, Compromise, Discontinuance and Judgment**

(a) No action for wrongful death in which a minor or an incapacitated person has an interest shall be discontinued nor shall the interest of a minor or an incapacitated person in any such action or in a judgment for damages recovered therein be compromised or settled until the court, upon petition of any party in interest, shall allow the discontinuance or approve the compromise or settlement as being fair and equitable.

(b)(1) When as the result of a verdict, judgment, compromise, settlement or otherwise it has been determined that a sum of money is due the plaintiff in an action for wrongful death, the court, upon petition of any party in interest, shall make an order designating the persons entitled to share in the damages recovered and the proportionate share of the net proceeds to which each is entitled. If a share shall be payable to a minor or incapacitated person, the court shall designate as the person to receive such share a guardian of the estate of the minor or incapacitated person, qualified to receive the fund, if there is one or one is to be appointed . . . .

Pa.R.C.P. 2206(a), (b)(1). In accordance with the plain language of these sections, Rule 2206 is typically applied to settlement of actions "in which a minor or incapacitated person has an interest." Pa.R.C.P. 2206(a). Nevertheless, the rule does not limit the scope of judicial oversight to these actions alone, providing as well for review and approval "upon petition of any party in interest," of the distribution of net proceeds of any wrongful death settlement. *See id.; Hewitt v. Masser Motor Express,* 43 Pa. D. & C. 514, 519 (Phila.Co.1942) (applying Rule 2206). Indeed, subsection (b)(1) makes such review available even where the claims at issue do not encompass the interest of a minor or other incapacitated person. *See* Pa.R.C.P. 2206(b)(1). Whereas subsection (a) implicates only the interest of minors or other incapacitated persons, the first two sentences of subsection (b) distinguish be-

tween the interests of such persons and those of others. In its first sentence, subsection (b)(1) specifies the power of the court to apportion damages between beneficiaries in wrongful death actions, while providing more specific instruction in its second sentence for treatment of shares payable to minors or other incapacitated persons. If the subsection's first sentence did not contemplate judicial oversight of wrongful death settlements other than those involving minors, this second sentence would be superfluous. We conclude accordingly that the trial court acted properly within the scope of the authority provided by Rule 2206 in reviewing the claims at issue here. *See Hewitt*, 43 Pa. D. & C. at 519 (quoting Explanatory Comment— 1939 ("The rule is applicable to cases where all the persons beneficially interested in the action are adults as well as where some are minors.")).

■ ¶ 7 Although we find no reported appellate cases defining the scope or standard of appellate review of trial court orders approving settlement and distribution plans under Rule 2206, we note that our Supreme Court has reviewed acceptance or rejection of settlement proposals benefiting other classes of beneficiaries merely for abuse of discretion. *See Dauphin Deposit Bank & Trust Co. v. Hess*, 556 Pa. 190, 727 A.2d 1076, 1080 (1999). Accordingly, we will apply that standard to the claims at issue here. *See Paden v. Baker Concrete Const., Inc.*, 540 Pa. 409, 658 A.2d 341, 343 (1995) (defining abuse of discretion as misapplication of law, exercise of judgment in a manifestly unreasonable fashion, or exercise of bias in rendering a decision).

¶ 8 Utica contends that the parties' proposed scheme of distribution contravenes restrictions imposed by the Wrongful Death Act (the Act) on the permissible proportions of distribution, and that the trial court had no discretion to alter the Act's mandate. Brief for Appellant at 11, 13. Having carefully considered the language of the Act, as well as provisions of the DEF Code on which the trial court relied, we concur in the trial court's assessment that nothing in the applicable provisions precludes the challenged disclaimer or curtails the discretion of the court to approve distribution where a beneficiary entitled to intestate distribution disclaims her interest.

¶ 9 In Pennsylvania, the cause of action for Wrongful Death is prescribed by statute to secure damages for individual relatives of the decedent as compensation for the pecuniary loss occasioned by the decedent's death. *See Tulewicz v. SEPTA*, 529 Pa. 588, 606 A.2d 427, 431 (1992). Accordingly, the Wrongful Death Act exempts the proceeds of such actions from the claims of the decedent's creditors and specifies distribution of awards and settlements to the decedent's intestate beneficiaries. These protections are documented by the following pertinent language of the Act:

§ 8301. **Death action**

(a) **General rule.**—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) **Beneficiaries.**—Except as provided in subsection (d) [providing for actions by the personal representative of the decedent "[i]f no person is eligible to recover damages under subsection (b)"], the right of action created by this sec-

tion shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. *The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.*

42 Pa.C.S. § 8301(a), (b) (emphasis added).

¶ 10 In this case, Utica advocates extending the language italicized above to prevent distribution of settlement proceeds except as prescribed in section 2102 of the DEF Code, which delimits the distribution of a spouse's intestate share. The provision states as follows:

**§ 2102. Share of surviving spouse**

The intestate share of a decedent's surviving spouse is:

\* \* \* \*

(3) *If there are surviving issue of the decedent all of whom are issue of the surviving spouse also, the first $30,000 plus one-half of the balance of the intestate estate.*

42 Pa.C.S. § 2102(3). Utica argues that this section, when read in conjunction with the Wrongful Death Act, *compels* distribution to the surviving spouse of the specified proportion of the intestate estate. Accordingly, by Utica's logic, where as here all of the decedent's children are also children of the surviving spouse, that spouse *must* take "the first $30,000 plus one-half of the balance of the intestate estate."

¶ 11 In support of this conclusion, Utica relies on our Supreme Court's decision in *Seymour v. Rossman,* 449 Pa. 515, 297 A.2d 804 (1972). We find *Seymour* distinguishable and, therefore, of little persuasive value. In *Seymour,* the trial court

approved distribution of a wrongful death settlement to the decedent's widow and minor child in proportion to the pecuniary loss each beneficiary had demonstrated stemming from the decedent's passing. *See id.* at 806. Consequently, the decedent's widow received the substantial majority of the settlement proceeds ($87,-703.75), while the minor received only a token payout ($4184). *See id.* The Superior Court reversed, directing distribution in accordance with the scheme of intestate succession established by the DEF Code. The Code provided that because the minor was the child of a prior marriage, she should share equally in the award with the decedent's spouse. Upon review, the Supreme Court found the trial court's order logically consistent with the purpose underlying the Wrongful Death Act, but recognized that the plain language chosen by the legislature required allocation between the beneficiaries in accordance with the intestate method of distribution. *See id.* at 807 ("Under the circumstances we cannot disturb the plain meaning of the [Wrongful Death] Act in the absence of strong contravening considerations.").

¶ 12 Conspicuously absent from both *Seymour* and the Wrongful Death Act, however, is any limitation of the right of an intestate beneficiary to disclaim his or her intestate share. Moreover, such a right is provided, without limitation, by a provision of the DEF Code. *See* 20 Pa. C.S. § 6201. Section 6201 allows virtually every class of beneficiary an expansive right to disclaim her share of devolved property, limited only by the content of the written disclaimer. The section defines that right as follows:

**§ 6201. Right to disclaim**

A person to whom an interest in property would have devolved *by whatever means,* including a beneficiary under a will, an appointee under the exercise of a

power of appointment, *a person entitled to take by intestacy,* a joint tenant with right of survivorship, a donee of an inter vivos transfer, a donee under a third-party beneficiary contract (including beneficiaries of life insurance and annuity policies and pension, profit-sharing and other employee benefit plans), and a person entitled to a disclaimed interest, may disclaim it in whole or in part by a written disclaimer which shall:

(1) describe the interest disclaimed;

(2) declare the disclaimer and extent thereof; and

(3) be signed by the disclaimant.

The right to disclaim shall exist notwithstanding any limitation on the interest in the nature of a spendthrift provision or similar restriction.

20 Pa.C.S. § 6201 (emphasis added).

¶ 13 This provision, by its plain language, applies to those *"entitled to take by intestacy." Id.* (emphasis added). As we have recognized, the Wrongful Death Act prescribes distribution of wrongful death awards and settlements as *"in the case of intestacy."* 42 Pa.C.S. § 8301(b) (emphasis added). No prior case has considered the conceptual similarity of these two phrases or its import for the beneficiary of a Wrongful Death settlement who seeks to disclaim her interest. Nor has any case considered any broader interplay of these two statutes in allowing or precluding disclaimer of a beneficiary's interest in a Wrongful Death settlement. Nevertheless, because the plain language of the Wrongful Death Act evinces the intent of the legislature to avail beneficiaries of the protection (and limitation) of the law of intestate succession, we conclude that the Act necessarily vests "beneficiaries" recognized in subsection (b) with rights otherwise available to those who would take by intestacy. These rights, as expressly prescribed by the DEF Code, include the

right to disclaim provided by section 6201. A contrary conclusion, imposing on wrongful death beneficiaries the limitations of intestate succession without extending the right of disclaimer, finds no support in the language of the Act. *See* 42 Pa.C.S. § 8301. Moreover, section 6201 casts a wide net, encompassing not merely the interest of "a person entitled to take by intestacy," but also the interest of anyone "to whom an interest in property would have devolved by *whatever* means." 20 Pa.C.S. § 6201 (emphasis added). Consequently, we are compelled by the clear import of both statutes to recognize the right of Wrongful Death Act beneficiaries to disclaim an intestate share otherwise made available by the Wrongful Death Act. Because the trial court's order approving distribution is entirely consistent with this holding, we conclude that it did not abuse its discretion.

¶ 14 In support of its second contention, Utica argues, notwithstanding the language of the Wrongful Death Act, that the trial court erred in approving the proposed settlement and distribution because the "clear intention of the petition" was to avoid Utica's subrogation interest. Brief for Appellant at 16. To establish its interest, Utica relies on section 671 of the Workers' Compensation Act, which provides in pertinent part:

§ 671. **Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award**

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compen-

sation payable under this article by the employer ....

77 P.S. § 671. Applying this provision, our Courts have recognized that in the case of payment of fatal claims benefits, a decedent's employer is entitled to a subrogation lien against any recovery in tort made by the widow against a third party. *See Greater Lancaster Disposal/SCA Servs. v. Workers' Comp. Appeal Bd. (Snook)*, 147 Pa.Cmwlth.224, 607 A.2d 334 (1992). Utica argues that the right this section creates is absolute and may not be defeated by the parties' construction of a settlement. Brief for Appellant (citing *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 801 A.2d 635 (Pa.Cmwlth. 2002)). The trial court concluded that it lacked jurisdiction to determine Utica's subrogation interest or to enforce it against Debbie Gillette's recovery. Trial Court Opinion, 4/5/04, at 5 (quoting *Romine v. Workers' Comp. Appeal Bd. (CNF, Inc.)*, 798 A.2d 852, 856 (Pa.Cmwlth.2002) ("[T]he Court of Common Pleas has no jurisdiction to adjudicate matters under the [Workers' Compensation] Act, including the application of any subrogation liens.")).

■ ¶ 15 We need not dispose of the trial court's objection to jurisdiction to determine the viability of Utica's claims. Upon review of the record in light of the authority it cites, we find Utica's position unsustainable. We recognize, as did the trial court, that "subrogation rights will not be affected by the way in which the claimant and third-party tortfeasor, or the factfinder in their action, characterize the nature of the third-party recovery." *Cullen v. Pa. Prop. & Cas. Ins. Guaranty Assoc.*, 760 A.2d 1198, 1201 (Pa.Cmwlth. 2000). Nevertheless, this proposition assumes that the "claimant" against whom the subrogation interest is asserted holds a current, legally enforceable interest in the proceeds of the "third party recovery" or, at least acceded to the recovery at some prior time and exercised dominion over it. This conclusion is not undermined by the cases on which Utica relies. In *Thompson*, a workers' compensation claimant recovered a settlement against a third party tortfeasor and apportioned the proceeds to recovery for pain and suffering. *See* 801 A.2d at 637. Because proceeds so designated presumably could not be equated with the pecuniary losses for which the claimant had received workers' compensation benefits, he asserted that the recovery was not subject to his employer's workers' compensation subrogation lien. *See id.* The Commonwealth Court reasoned that where "the fund to which [the employer] seeks subrogation is for the same compensable injury for which he is liable under the Act," a remedy in the form of damages is "equitable" with the injury regardless of the manner in which the fund is apportioned to the claimant. *Id.* at 638. The Court held accordingly that a workers' compensation claimant could not avoid his employer's statutory subrogation lien by apportioning his award to pain and suffering as opposed to lost wages. *See id.* at 637–38. Quoting this Court's decision in *Bumbarger v. Bumbarger,* the Commonwealth Court recognized that:

The subrogation rights of the employer or insurance carrier encompass amounts which are required to be paid under the law. Certainly the claim for subrogation cannot be modified by the claimant and the third party by arbitrarily apportioning the elements of damage for his injuries claimed by the employe against the wrongdoer. Consequently, where, as here, the employer was not a party to the suit or settlement with the third party and did not otherwise foreclose his

right to subrogation, the employe and the third party cannot deprive the employer of his full subrogation right by unilaterally designating a portion of the recovery as damages for pain and suffering. Designation of the type of damage recovered by the settlement is not necessarily conclusive against the employer's right to subrogation for compensation paid by him under the Act.

*Thompson*, 801 A.2d at 637–38 (quoting *Bumbarger*, 190 Pa.Super. 571, 155 A.2d 216, 218–19 (1959)).

¶ 16 As the foregoing excerpt illustrates, the holdings of *Thompson* and *Bumbarger* establish that a workers' compensation claimant may not *apportion* his interest in a third party tort recovery to defeat a workers' compensation subrogation interest. Should he attempt to do so, his apportionment will be deemed voidable to the extent that it operates to defeat a subrogation lien for benefits paid as compensation for the same underlying injury. Nothing in either case addresses the right of the beneficiary of a third party tort recovery to *disclaim* his interest in that recovery. Moreover, we do not find disclaimer analogous to apportionment such as to require application of the same rule to both types of cases. While, in the case of apportionment, the beneficiary has acceded to the benefit of the recovery, the disclaimant has not done so. By operation of law, "a disclaimer relates back for all purposes to the date of death of the decedent," 20 Pa.C.S. § 6205(a), and "shall, for purposes of determining the rights of other parties, be equivalent to the disclaimant's having died before the decedent in a case of a devolution by will or intestacy . . . .," 20 Pa.C.S. § 6205(b). Thus, by definition, the disclaimant does not have and has not had any interest in the amount disclaimed. *Cf.*

*In re Bute's Estate*, 355 Pa. 170, 49 A.2d 339, 341 (1946) (emphasis added) ("When a devise is renounced the renunciation will relate back to the moment when the gift was made and prevent it from ever taking effect, *leaving the devisee without an interest in the property and without liability in connection therewith.*"). In this case, given the application of the Wrongful Death Act, which provides for apportionment of an awardee's recovery as "in the case of intestacy," 42 Pa.C.S. § 8301(b), Debbie Gillette's disclaimer of her right to her intestate share of the wrongful death recovery must relate back to the date of her husband's death. *See Bute's Estate*, 49 A.2d at 341. Accordingly, she does not have and has not had an interest in a third party recovery against which Utica seeks to assert its lien. *See id.* Unlike the workers' compensation claimants in *Thompson* and *Bumbarger*, she never acceded to any compensation for her husband's injury. *See Bute's Estate*, 49 A.2d at 341. Thus, even assuming the lien's existence, the trial court did not err in declining to order its enforcement over Debbie Gillette's disclaimer.

¶ 17 For the foregoing reasons, we affirm the trial court's order approving the parties' proposed settlement and distribution.

¶ 18 Order **AFFIRMED**.