937 A.2d 430

Debbie GILLETTE, Individually and as Administratrix of the Estate of John Gillette, Deceased

v.

Catherine WURST, as Parent and Guardian of A.W., a Minor, Jerome J. Wurst and Catherine Wurst, and J.J. Wurst Landscape Contractor, Inc.

J.T., a Minor, by and through his Parents and Legal Guardians, Joe Tury and Noreen Tury, and Joe Tury and Noreen Tury, Individually

v.

Jerome Wurst and Catherine Wurst

Appeal of Utica National Insurance Group and General McLane School District.

Supreme Court of Pennsylvania.

Argued Sept. 13, 2006.

Decided Dec. 28, 2007.

George Joseph, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc, Erie, for Utica Nat. Ins. Group and General McLane School Dist., appellant.

Mark Charles Schultz, Cozen O'Connor, Philadelphia, for Nat. Ass'n of Subrogation Professionals, appellant amicus curiae.

Alan John Natalie, Alan J. Natalie, Atty. at Law, P.C., for A.W., appellee.

Charles V. Longo, Charles V. Longo Co., L.P.A., Beachwood, OH, for Debbie Gillette and John Gillette, appellees.

William Van Scyoc, for Joe Tury, Noreen and J.T., appellees.

Robert Eugene Dapper, Douglas J. Stipanovich, Dapper, Baldasare, Benson, Behling & Kane, Pittsburgh, for Jerome and Catherine Wurst, appellees.

Fred Harold Hait, Smigel, Anderson & Sacks, L.L.P., Harrisburg, for Pa. Trial Lawyers' Ass'n, appellee amicus curiae.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

Justice EAKIN.

John Gillette, a middle school teacher, was shot and killed by a student, A.W., while chaperoning an eighth-grade dance. A.W. also shot another student, J.T., who survived without permanent injury. Appellant Utica National Insurance Group is the workers' compensation provider for General McLane School District, where the decedent worked and was killed. Utica paid fatal claim benefits to John Gillette's wife, Debbie Gillette ("Gillette").

Gillette, as executor of the decedent's estate, commenced a wrongful death action against A.W. and his parents. The Wrongful Death Statute states:

(a) General rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) Beneficiaries.— ... [T]he right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased.... *The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person* under the statutes of this Commonwealth.

42 Pa.C.S. § 8301(a)-(b) (emphasis added). J.T. also brought an action against the Wursts, and the two cases were consolidated. J.T. and Gillette agreed to settle their claims against the Wursts for the $300,000 limit of the Wursts' homeowners' insurance policy; Gillette was to receive $288,000, and J.T. would receive the remainder.

If Pennsylvania's intestacy scheme was used to distribute the Gillettes' award, as prescribed by § 8301(b), the remainder of the $288,000 award after payment of counsel fees and costs would have provided Gillette with a spousal share of $109,493.77; each of the decedent's three children would have received $26,497.93.[1] However, under the proposed settlement agreement, Gillette waived her right to any share of the settlement funds, with the exception of $12,000 for the decedent's funeral expenses; the remaining net funds were to be distributed among the three children. Daughter Abby Gillette was to receive $146,987.55, and the couples' two sons each were to receive $15,000. Although the complaint included claims for both wrongful death and survival, the parties did not apportion the settlement.

The parties petitioned the court for approval of the proposed settlement and distribution; the same day, appellant filed a petition to intervene, asserting it was entitled to subrogate Gillette's share of the settlement to recover the $167,934 in fatal claim benefits it paid to her following her husband's death. Appellant cited § 671 of the Workers' Compensation Act, 77 P.S. § 1 *et seq.*, in support of its claim. Section 671 states:

§ 671. *Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award*

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal

---

1. Section 2102 of the Probate, Estates and Fiduciaries Code (PEF Code) states:

    The intestate share of a decedent's surviving spouse is:

    * * *

    (3) If there are surviving issue of the decedent all of whom are issue of the surviving spouse also, the first $30,000 plus one-half of the balance of the intestate estate.

    20 Pa.C.S. § 2102(3). Section 2103 provides that if there is no surviving spouse or if there remains a balance to which the surviving spouse is not entitled, the balance shall pass to the decedent's issue, if any exist. *Id.*, § 2103(1). Each of the decedent's issue shall take in equal shares. *Id.*, § 2104.

representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer. . . .

*Id.,* § 671 (footnote omitted).

The trial court granted Utica's petition to intervene, but determined it was without jurisdiction to resolve the subrogation issue, citing *Romine v. WCAB (CNF, Inc./The Potato Sack),* 798 A.2d 852, 856–57 n. 10 (Pa.Cmwlth.2002) ("The Court of Common Pleas has no jurisdiction to adjudicate matters under the [Workers' Compensation] Act, including the issues of the application of any subrogation liens.") (citations omitted). Trial Court Opinion, 1/27/04, at 2. With regard to the petition to approve the wrongful death settlement, the court concluded, "[t]here is nothing in the law which precludes all of those entitled to recover under the Wrongful Death Statute from agreeing on a different manner of distribution." *Id.,* at 3. The court approved the settlement, and Utica appealed.

Utica argued the distribution set forth in the Wrongful Death Statute is the exclusive means of distribution, citing *Seymour v. Rossman,* 449 Pa. 515, 297 A.2d 804 (1972), which held the intestate distribution referred to in the Wrongful Death Statute is mandatory.[2] Utica asserted Gillette was compelled to take the first $30,000 plus one-half of the balance,

---

2. In *Seymour,* the trial court initially approved a settlement and distribution that awarded the greater part of the third-party settlement proceeds to the decedent's surviving spouse and awarded the decedent's minor daughter from a prior marriage only a slight pay-out. Upon the daughter's objection, the trial court vacated its order approving the settlement and instead ordered a distribution in equal shares to each woman, as prescribed by the applicable provision of the intestacy law at that time. *Id.,* at 806. The widow appealed, arguing the proceeds of a wrongful death action need not be distributed in strict compliance with the intestate distribution scheme. She asserted since the Statute was enacted to compensate each dependent relative for the loss they suffered due to the death, the parties should be permitted to fashion a distribution scheme to achieve that goal. On appeal, this Court rejected the widow's argument, finding "[t]he expression of intent of the legislature that distribution of the funds recovered under the Wrongful Death Act of 1855 be distributed in accordance with the manner provided for distribution in the event of intestacy is unmistakably clear." *Id.,* at 808–09 (footnote omitted).

and Utica should have been permitted to subrogation from that spousal share pursuant to § 671 of the Workers' Compensation Act. Utica argued that even if Gillette wished to accept an alternative distribution scheme, she was nevertheless precluded from structuring it in a way that defeated Utica's right of subrogation under § 671.

The Superior Court determined it was unnecessary to address the trial court's conclusion that it lacked jurisdiction to determine or enforce Utica's subrogation interest in order to settle Utica's claims. The court reasoned that although the right of subrogation created by § 671 of the Act is absolute and cannot be defeated by the parties' construction of a settlement, "this proposition assumes that the 'claimant' against whom the subrogation interest is asserted holds a current, legally enforceable interest in the proceeds of the 'third party recovery,' or, at least acceded to the recovery at some prior time and exercised dominion over it." *Gillette v. Wurst*, 869 A.2d 488, 495 (Pa.Super.2005).

The court noted the plain language of § 6201 permits individuals who are "entitled to take by intestacy" to disclaim. *Id.*, at 494. It contrasted this phrase with the language from § 8301(b) of the Wrongful Death Statute, which states an award under the Statute shall be distributed as it would be distributed "in the case of intestacy." *Id.* The court considered these two provisions and the broad nature of the right to disclaim granted by § 6201, and concluded nothing in *Seymour*, the Wrongful Death Statute, or the Workers' Compensation Act limits the broad right to disclaim granted by the disclaimer provision of the PEF Code.[3] *Id.*, at 493–94. "[S]ec-

---

**3.** Section 6201 of the PEF Code allows an intestate beneficiary to disclaim an intestate share:

A person to whom an interest in property would have devolved by whatever means, including a beneficiary under a will, an appointee under the exercise of a power of appointment, a person entitled to take by intestacy, a joint tenant with right of survivorship, a donee of an inter vivos transfer, a donee under a third-party beneficiary contract (including beneficiaries of life insurance and annuity policies and pension, profit-sharing and other employee benefit plans), and a person entitled to a disclaimed interest, may disclaim it in whole or in part by a written disclaimer.... The right to disclaim shall exist

tion 6201 casts a wide net, encompassing not merely the interest of 'a person entitled to take by intestacy,' but also the interest of anyone 'to whom an interest in property would have devolved by *whatever* means.'" *Id.*, at 494 (quoting 20 Pa.C.S. § 6201). The court determined § 671 of the Act and the cases interpreting it establish only that a "workers' compensation claimant may not *apportion* his interest in a third party tort recovery to defeat a workers' compensation subrogation interest. Should he attempt to do so, his apportionment will be deemed voidable to the extent that it operates to defeat a subrogation lien for benefits paid as compensation for the same underlying injury." *Id.*, at 496.

Having concluded Gillette rightfully disclaimed her interest in the settlement—and since a disclaimant is treated as having predeceased the decedent—the court determined Utica was not entitled to subrogate Gillette's share of the recovery since she never had any interest in that recovery. Since Utica was only entitled to assert its subrogation lien against Gillette, and not against her children,[4] the court affirmed the trial court's order approving the proposed settlement and distribution. *Id.*, at 494–95.

■ This Court granted allowance of appeal to consider whether a party claiming entitlement to payment under the Wrongful Death Statute may disclaim her share of those proceeds once offered, when her disclaimer effectively negates the valid entitlement to subrogation of an insurance carrier. As this is a question of law, our scope of review is plenary, and our standard of review is *de novo*. *Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766, 770 (2006).

> notwithstanding any limitation on the interest in the nature of a spendthrift provision or similar restriction.
> 20 Pa.C.S. § 6201.

**4.** "[W]here a widow institutes a [workers'] compensation action[, 77 P.S. § 671,] and an increased award to her is generated by the presence or existence of children, the compensation carrier is not subrogated to the recovery received by the children in a wrongful death action." *Anderson v. Greenville*, 442 Pa. 11, 273 A.2d 512, 515 (1971).

■ We initially address the trial court's jurisdiction. The trial court approved the proposed settlement, finding nothing in the Wrongful Death Statute prohibited the parties from agreeing on a distribution that differed from the intestate scheme set forth in § 8301(b) of the Statute, but noted its decision "is not intended to approve of the distribution for any purposes other than those attendant to the Wrongful Death Statute. The parties' settlement agreement does not apportion damages to a particular type of claim such as loss of consortium, and the Wrongful Death Statute does not authorize the [c]ourt to make an independent judgment in that regard." Trial Court Opinion, 1/27/04, at 3 (citing *Thompson v. WCAB (USF & G Co.)*, 801 A.2d 635 (Pa.Cmwlth.2002) (claimant cannot avoid employer's statutory subrogation lien by apportioning third-party award to pain and suffering rather than lost wages)).

There is no question Utica is entitled to subrogation under the plain language of the Act since this case clearly involves a compensable injury caused by the act of a third party. Under § 671, Utica "shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party" for any workers' compensation benefits paid. 77 P.S. § 671. However, it is equally clear that the legislature intended for an award under the Wrongful Death Statute to be administered as it would be in the case of intestacy, and that the broad right to disclaim under the PEF Code allows "[a] person to whom an interest in property would have devolved by whatever means, including . . . a person entitled to take by intestacy" to disclaim it. 20 Pa.C.S. § 6201.

■ The courts of common pleas lack jurisdiction to adjudicate Workers' Compensation claims including issues involving subrogation. *Romine*, at 856–57 n. 10. However, the issue here does not arise solely under the Workers' Compensation Act; rather, it demands consideration of the interplay between Utica's unquestioned right of subrogation under the Act, Gillette's right to a wrongful death award, and the intestacy laws. Therefore, this matter was properly filed before the trial court

rather than an administrative law judge, who would not be in position to adjudicate the wrongful death issue. It is the existence of the valid subrogation claim, not jurisdiction to adjudicate it in the first place, that answers the issue.

The Workers' Compensation Act provides an absolute right of subrogation, and its purpose is threefold: it prevents double recovery by the claimant for the same injury, it ensures that an employer is not required to pay for the negligence of a third party, and it prevents a third party from escaping liability for his wrongful conduct. *Brubacher Excavating, Inc. v. WCAB (Bridges)*, 575 Pa. 168, 835 A.2d 1273, 1277 (2003) (citing *Dale Mfg. Co. v. WCAB (Bressi)*, 491 Pa. 493, 421 A.2d 653, 654 (1980)). In addition, the purpose of the Act as a whole is to benefit the workers of this Commonwealth; therefore, its provisions must be liberally construed to effectuate its humanitarian objectives, and borderline interpretations are construed in the injured party's favor. *Harper & Collins v. WCAB (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996).

The purpose of the Wrongful Death Statute is to compensate the decedent's relatives for their loss. *Tulewicz v. Southeastern Pennsylvania Transportation Authority*, 529 Pa. 588, 606 A.2d 427, 431 (1992). The damages recovered are therefore not part of the decedent's estate; rather, they constitute compensation to the individual family members for their loss. *Id.*, at 431 (citing *Miller v. Preitz*, 422 Pa. 383, 221 A.2d 320 (1966), *overruled on other grounds*, *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968)).

The right to disclaim under § 6201 of PEF Code is granted to any "person to whom an interest in property would have devolved by whatever means, including ... a person entitled to take by intestacy...." 20 Pa.C.S. § 6201. The comment supplied by the Pennsylvania Joint State Government Commission—which may be used in determining the intent of the General Assembly, *see* 1 Pa.C.S. § 1939; *In re Martin's Estate*, 365 Pa. 280, 74 A.2d 120, 122 (1950)—states one of the legislature's goals in enacting the disclaimer provisions of the

PEF Code was "to liberalize the property law requirements for disclaimer so that legitimate attempts to avoid taxes on unwanted gifts will not be frustrated by property law provisions that are stricter than those required for tax purposes." 20 Pa.C.S. § 6201, Jt. St. Govt. Comm. Cmt. (1976). Thus, unlike the compensatory purposes of the Workers' Compensation and Wrongful Death Statutes, the right to disclaim is most often used to avoid taxes or other claims on the recovery under another statute.

The matter is resolved by the plain language of § 671, which states that when the compensable injury is caused by a third party, an employer "shall be subrogated to the *right* of the employe [or] his representative . . . against such third party." 77 P.S. § 671 (emphasis added). Thus, the insurer, having paid Gillette, is not subrogated to the amount actually received by Gillette; rather, it is subrogated to the share that Gillette has the *right* to receive. Gillette properly requested payment from the third party, as she had a right to receive an award apportioned according to the intestate schedule. That right was effectively passed to Utica by virtue of its legitimate subrogation claim. The right to disclaim under the intestacy statutes and the right of subrogation under § 671 both exist here, but under the circumstances, Gillette cannot exercise the right to disclaim, since that which she seeks to disclaim is a right held not by her but by Utica.

Our conclusion in this regard comports with *Seymour*—just as a party may not apportion an award under the Wrongful Death Act in a way that defeats a workers' compensation provider's subrogation right under § 671, a plaintiff who has instituted an action under the Wrongful Death Statute may not then disclaim entitlement to the award and thereby defeat the right of subrogation under § 671. We conclude these statutes are not irreconcilable since each may achieve its intended purpose under the above construction.

Disclaiming benefits to minimize or avoid taxes is clearly permitted by statute. Disclaiming to avoid subrogation to which a private party was statutorily entitled is not permitted.

Accordingly, we reverse the Superior Court's decision, which affirmed the trial court's order approving the parties' proposed settlement and distribution. We remand this matter to the trial court for an order distributing the settlement proceeds in a manner consistent with this opinion.

Order reversed; case remanded. Jurisdiction relinquished.

Former Justice NEWMAN did not participate in the decision of this case.

Justice CASTILLE and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice BAER files a dissenting opinion.

Justice SAYLOR dissents.

Chief Justice CAPPY concurring.

I join the Opinion Announcing the Judgment of the Court in its result, but I disassociate myself from its rationale. The lead opinion would find that Debbie Gillette had a right to receive an award under the Wrongful Death Act, and that Ms. Gillette's right had passed by operation of the Workers' Compensation Act to Utica National Insurance which compensated Ms. Gillette for the death of her husband while at work. The lead opinion does not explain how this right vested in Ms. Gillette, who had disclaimed her share of the award. By operation of law, "a disclaimer relates back for all purposes to the date of death of the decedent and shall, for purposes of determining the rights of other parties, be equivalent to the disclaimant having died before the decedent in a case of devolution by will or intestacy." 20 Pa.C.S. § 6205. Therefore, Ms. Gillette's disclaimer creates a legal fiction that assumes that she died before her husband was fatally wounded, and thus she could not have acquired a right to which Utica's right of subrogation could attach.

I would reach the same result as the lead opinion because I would follow the rule of disclaimer to its natural conclusion,

not solely in how it affects the wrongful death award, but also in how her fictional death before the death of her spouse would have affected the workers' compensation award. If Ms. Gillette is treated as predeceased because of her disclaimer, we can assume that the Gillette children would have received not only the wrongful death award, but also the workers' compensation award. That being the case, Utica would have been subrogated to the children's right to receive a wrongful death award, having already paid them workers' compensation benefits. If the disclaimer requires us to indulge the legal fiction that treats Ms. Gillette as if she has predeceased her husband then we are bound to follow this course to its logical conclusion in the law and uphold Utica's right to be subrogated to whomever directly benefits. Otherwise, we leave a loophole that makes the subrogation right a nullity in wrongful death cases, and we allow a double recovery.

Justice BAER dissenting.

Decedent John Gillette was employed as a teacher at Parker Middle School. While acting in the course and scope of employment as a chaperone at an eighth grade graduation dance, Decedent was shot and killed by a student, A.W. A.W. also shot and injured another student, J.T. Decedent was survived by his wife, Appellee Ms. Gillette, and their three children. Appellant Utica National Insurance Group is the workers' compensation provider for the school district where Decedent worked and was killed. Following Decedent's death, Utica paid fatal claim benefits to Ms. Gillette in the amount of $167,934. Ms. Gillette, in her own right and as executor of Decedent's estate, commenced a wrongful death lawsuit against A.W. and his parents, which was consolidated with the personal injury lawsuit brought by J.T.[1] Ms. Gillette

1. A wrongful death action is intended to secure compensation to certain relatives of decedent and any sum recovered in wrongful death action does not become an asset of decedent's estate. *Tulewicz v. Southeastern Pennsylvania Transp. Authority*, 529 Pa. 588, 606 A.2d 427 (1992); *In re Pozzuolo's Estate*, 433 Pa. 185, 249 A.2d 540 (1969). In this case, Ms. Gillette chose to bring the wrongful death action on her own behalf and on behalf of the estate. It is not clear why she chose this course of

and J.T. agreed to settle their claims against the Wursts for $300,000, the limit of the Wurst's homeowner's insurance policy. Under the proposed settlement, Ms. Gillette would receive $288,000 and J.T. would receive the remaining $12,000. Pennsylvania's Wrongful Death Statute mandates that Pennsylvania's intestacy scheme be used to determine distribution of the $288,000 award received by Ms. Gillette. *See* 42 Pa.C.S. § 8301(b). After payment of counsel fees and costs, if Ms. Gillette had accepted her intestate spousal share, she would have received $109,493.77, and each of Decedent's three children would have received $26,497.93.[2] Ms. Gillette, however, exercised her right under Pennsylvania law to disclaim the portion of the settlement funds allotted to her as the surviving spouse by the intestacy scheme, with the exception of $12,000 for Decedent's funeral expenses, resulting in the balance of the spousal share to be distributed to Decedent's and her children.

The day the parties petitioned the court to approve this settlement, Utica filed a petition to intervene, asserting subrogation rights against Ms. Gillette's share of the settlement, seeking to recover a portion of the $167,934 in fatal claim benefits it paid to her following Decedent's death. The trial court permitted Utica to intervene, and then approved the settlement, ruling that it lacked jurisdiction to resolve the subrogation issue presented by Utica and upholding Ms. Gillette's right to disclaim her share of the settlement funds. The Superior Court affirmed, finding that nothing prevents a beneficiary from disclaiming an intestate interest in proceeds from a wrongful death action so long as the disclaimer is carried out in accordance with applicable statutory law.[3]

action, nor is it pertinent to my dissent. For simplicity, I will refer to the plaintiff/appellee as Ms. Gillette.

2. If there are surviving issue of the decedent, all of whom are issue of the surviving spouse, the intestate share of a surviving spouse is the first $30,000, plus one-half of the balance of the intestate estate. *See* 20 Pa.C.S. § 2102(3).

3. The trial court believed that the question of Utica's subrogation rights was solely within the jurisdiction of the workers' compensation system, requiring Utica to raise the issue before a workers' compensation judge.

The Majority reverses the trial and Superior Courts, reasoning that Utica is not subrogated to the amount Ms. Gillette actually received, but to the share that Ms. Gillette had a right to receive. I respectfully dissent because, as explained below, this analysis fails to consider the consequences of Ms. Gillette's exercise of her right to disclaim under 20 Pa.C.S. § 6201 as clearly enunciated by the plain language of 42 P.S. § 6205(b) (these are sections of Pennsylvania's Probate, Estates and Fiduciaries Code, hereinafter "PEF Code"). In accord with this statutory language, quoted below, when Ms. Gillette disclaimed her right to the settlement proceeds, she triggered a legal fiction requiring that she be treated as having predeceased Decedent. Thus, the proceeds from the wrongful death action went directly to Decedent's children, and Ms. Gillette never had any right to them. Accordingly, the majority is incorrect when it hinges its results on Ms. Gillette's alleged right to receive the wrongful death proceeds. As that right never existed, there was nothing for Utica to subrogate against.

The action brought by Ms. Gillette was a wrongful death action. The Wrongful Death Statute provides that any damages recovered pursuant to such an action "shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person...." 42 Pa.C.S. § 8301(b). Pennsylvania's intestacy scheme, which is found in the PEF Code, describes the intestate share for a surviving spouse, see 20 Pa.C.S. § 2102, and further provides a right to disclaim, as follows:

### § 6201. Right to disclaim

*A person to whom an interest in property would have devolved by whatever means,* including a beneficiary under a will, an appointee under the exercise of a power of appointment, *a person entitled to take by intestacy,* a joint tenant with right of survivorship, a donee of an inter vivos

The Superior Court determined that it did not have to rule on the trial court's refusal to accept jurisdiction in light of its holding that Ms. Gillette prevailed on the merits.

transfer, a donee under a third-party beneficiary contract (including beneficiaries of life insurance and annuity policies and pension, profit-sharing and other employee benefit plans), and a person entitled to a disclaimed interest, *may disclaim it in whole or in part* by a written disclaimer. . . .

20 Pa.C.S. § 6201. The PEF Code also defines the effect of a disclaimer:

### § 6205. Effect of disclaimer

(a) In general.—A disclaimer relates back for all purposes to the date of the death of the decedent. . . .

(b) Rights of other parties.—Unless a testator or donor has provided for another disposition, the disclaimer shall, for purposes of determining the rights of other parties, be equivalent to the disclaimant's having died before the decedent in the case of a devolution by will or intestacy. . . .

20 Pa.C.S. § 6205.

This case is about the tension between this statutory right to disclaim and the effect thereof under Sections 6201 and 6205, and the provision of the Workers' Compensation Act that Utica relies upon in seeking to subrogate against Ms. Gillette's share of the wrongful death proceeds:

### § 671. Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer. . . .

77 P.S. § 671. The question before us is the impact of a beneficiary's disclaimer of her intestate share of proceeds from a wrongful death action on an insurance carrier's right of subrogation.

The legislature has created a unique statutory scheme in the case of the distribution of wrongful death proceeds, premised upon intestacy distribution. *See* 42 Pa.C.S. § 8301(b).

The law governing intestacy specifically includes the right to disclaim, 20 Pa.C.S. § 6201, and treats the disclaimant as having predeceased the decedent. 20 Pa.C.S. § 6205(b).[4] There is no dispute that the facts of this case establish a valid disclaimer by Ms. Gillette. We need not look beyond the plain language of Section 6205 to determine the effect of this disclaimer and the proper result in this case. The clear meaning of Section 6205(a) is that the status of the parties and the effect of the disclaimer are fixed to the time of the decedent's death, regardless of when the disclaimer is actually made. *See In re Bute's Estate,* 355 Pa. 170, 49 A.2d 339, 341 (1946) ("When a devise is renounced the renunciation will relate back to the moment when the gift was made and prevent it from ever taking effect, leaving the devisee without an interest in the property and without liability in connection therewith."); *In re Estate of McCutcheon,* 699 A.2d 746 (Pa.Super.1997) (holding that because a disclaimer relates back to the decedent's death, the status of parties in the chain of succession are established as of the time of death, regardless of when the disclaimer is made). In addition to relating a disclaimer back to the date of the decedent's death, Section 6205(b) establishes the time of death of the disclaimant as

4. Mr. Chief Justice Cappy, in his concurring opinion, invokes the fiction that a disclaimant is treated as having predeceased the decedent for purposes of disclaimer, and hypothesizes that if Ms. Gillette had truly predeceased Decedent, then Decedent's three children would have received fatal claim benefits. Under the hypothetical, where Ms. Gillette predeceased Decedent, the children also would have brought the wrongful death action and received the wrongful death award. Because the recipients of the fatal claim benefit and the wrongful death award would be the same in this scenario, the concurrence reasons that Utica would then have a right of subrogation against the three children. Respectfully, the hypothetical is premised on the improper expansion of the legal fiction created by 20 Pa.C.S. § 6205(b) to fatal claim benefits paid under the Workers' Compensation Act. The fiction applies only in the context of the devolution of property after exercise of a disclaimer under the PEF Code. It does not apply to benefits paid under the Workers' Compensation Act. Thus, the Legislature's creation of the fiction that the disclaimant predeceased the decedent for purposes of the PEF Code does not impact or alter the factual and legal reality that Ms. Gillette was the recipient of the fatal claim benefits under the Workers' Compensation Act. As these benefits went to Ms. Gillette and, by virtue of her disclaimer, the wrongful death proceeds went to the children, the concurrence is constructed upon a faulty premises.

prior to the death of the decedent. Applying the plain language of Section 6205 to this case leads to the fiction that at the time of Decedent's death, Ms. Gillette had predeceased him. Therefore, because she is treated as predeceased, she does not exist for purposes of determining distribution of the wrongful death award. Because she does not exist, she has no right nor interest in the wrongful death award distributed to Decedent's children.[5] As Ms. Gillette had no legal right or interest in the award, Utica can have no right to or interest to it either.

It is also noteworthy that Utica chose to contest the wrongful death award by filing a petition to intervene in the wrongful death action. Under Commonwealth Court precedent applying the Workers' Compensation Act, when a claimant is entitled to workers' compensation benefits, and also asserts a wrongful death action based upon the work-related injury, the two proceedings are entirely separate and have no relation or impact upon one another unless and until the claimant receives an award or settlement in the third party action. *Creighan v. W.C.A.B. (Mellon Stuart Corp.)*, 154 Pa.Cmwlth.620, 624 A.2d 680, 681 (1993). When that occurs, then, and only then, does the subrogation provision, 77 P.S. § 671, come into play. *Id.* In the context of this case, Utica's right of subrogation is not implicated until Ms. Gillette actually receives an award or settlement. Because Ms. Gillette does not, as a matter of law, have any right or interest in any part of the award that she disclaimed, Utica's right of subrogation is simply not implicat-

5. In order to establish a right of subrogation against a third-party recovery, an employer must demonstrate that the fund to which it seeks subrogation was for the same compensable injury for which the employer is liable under the Workers' Compensation Act. *Sharkey v. W.C.A.B. (Sharkey's American Hardware)*, 744 A.2d 345 (Pa.Cmwlth.Ct. 1999). Because of the existence of Ms. Gillette for purposes of the fatal claim benefits, Decedent's children had no right of their own to recover fatal claim benefits. *See Anderson v. Borough of Greenville*, 442 Pa. 11, 273 A.2d 512 (1971). The fatal claim benefits were therefore paid directly to Ms. Gillette. In contrast, by virtue of Ms. Gillette's disclaimer, the wrongful death award will be paid to Decedent's children. Consequently, the fund to which Utica seeks subrogation is not for the same injury for which it paid fatal claim benefits, and it cannot establish a right of subrogation against a third party recovery by Decedent's children. *Sharkey.*

ed, and has no impact on the distribution of the wrongful death proceeds.

Finally, I observe that the language of Section 6201 extends the expansive right to disclaim to most if not all conceivable beneficiaries. Whether the disclaimant has excessive unliquidated credit card bills, is a judgment debtor, or, like here, is subject to a right of subrogation, the legislature has decided, as a matter of sound public policy, that the satisfaction of the debt can be avoided through disclaimer. The majority implicitly limits this right to situations where the disclaimer will result in tax benefits for the disclaimant. However, that is not what the legislature has said. Simply because the right to disclaim is often used to avoid taxes does not mean that one cannot disclaim for any other reason, including defeating the claims of creditors. Indeed, that is what has happened here. Accordingly, I dissent.