2 A.3d 526

AMERICAN AND FOREIGN INSURANCE COMPANY, Royal Insurance Co. of America, Safeguard Insurance Company and Royal Indemnity Company, Appellants

v.

JERRY'S SPORT CENTER, INC., Jerry's Sport Center Northeast, Inc., Bonitz Brothers, Inc., Outdoor Sports Headquarters, Inc., Simmons Gun Specialties, Inc., National Assoc. for the Advancement of Colored People, National Spinal Cord Injury Assoc., American International Insurance Company, Doe Corporations 1–15, Appellees.

Supreme Court of Pennsylvania.

Argued May 13, 2009.

Decided Aug. 17, 2010.

Jamie Lynn Lenzi, Pittsburgh, Eugene F. Hickey, II, Scranton, Cipriani & Werner, P.C., Celeste M. Butera, Pro Hac Vice, for American & Foreign Insurance Co., et al.

Frederick A. Tecce, Conrad O. Kattner, McShea & Tecce, P.C., Philadelphia, for Amicus Curiae Complex Insurance Claims Litigation Association.

Richard Charles Mason, C. Tyler Havey, Stephen A. Cozen, Cozen O'Connor, Philadelphia, for Amicus Curiae American Ins. Assoc. & National Assoc. of Mutual Ins. Co.

Sal Cognetti, Jr., Foley, Cognetti, Comerford, Cimini & Cummins, David Joseph Solfanelli, Kelley & Polishan, LLC, Scranton, for Jerry's Sport Center, Inc., et al.

John Norig Ellison, Timothy Patrick Law, Bryan William Petrilla, West Conshohocken, Reed Smith, L.L.P., Philadelphia, for Amicus Curiae United Policyholders.

John Edward Iole, Joseph W. Montgomery, III, Margaret Caitlin Gleason, Jones Day, Pittsburgh, Richard H. Albert, Allentown, for Amicus Curiae Air Products & Chemicals, Inc.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

BAER, Justice.

The issue in this case is whether, following a court's declaration that an insurer had no duty to defend its insured, the insurer is entitled to reimbursement of the amounts paid for the defense of its insured in the underlying lawsuit. The trial court held that the insurer was entitled to reimbursement, while the Superior Court held that it was not. For the following reasons, we affirm, holding that an insurer is not entitled to be reimbursed for defense costs absent an express provision in the written insurance contract.

Appellant Insurance Companies are American and Foreign Insurance Company, Royal Insurance Company of America, Safeguard Insurance Company, and Royal Indemnity Company (collectively, Royal). Appellees are Jerry's Sport Center, Inc. and its subsidiaries, Jerry's Sport Center Northeast, Inc., Bonitz Brothers, Inc., Outdoor Sports Headquarters, Inc., Simmons Gun Specialties, Inc. (collectively, Insured). Insured is a firearm wholesaler-distributor and Royal is its commercial liability insurer.[1]

Royal and Insured entered into a commercial liability primary and umbrella insurance contract on or about October 18, 1981, which Insured maintained until about October 18, 2000. This policy insured against bodily injury [2] and obliged Royal to

---

1. Insured was also insured by American International South Insurance Company (AIG), which is not a party to this action.

2. Specifically, the insurance contract specified as follows with regard to bodily injury and property damage liability:

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit"

pay all expenses it incurred defending Insured. Reproduced Record (R.R.) 993a. It contained no language granting Royal the right to reimbursement of defense costs for a claim ultimately held not to be covered by the insurance contract.

In June, 2000, the National Association for the Advancement of Colored People (NAACP) and the National Spinal Cord Injury Association (NSCIA) filed a civil action against eighteen firearms wholesalers and distributors in the United States District Court for the Eastern District of New York (NAACP action). The NAACP and NSCIA sought to hold the firearms industry liable for injury, death, and other damages to association members through the negligent creation of a public nuisance by virtue of the industry's failure to distribute firearms reasonably and safely. In May of 2001, the NAACP added Insured as a defendant. In its complaint, the NAACP and NSCIA explicitly alleged that the defendants had caused bodily injury to their members. In its prayer for relief, the NAACP sought injunctive relief and monetary damages to establish a fund for the education, supervision and regulation of gun dealers. It did not seek damages to compensate individual members injured by the defendants' actions.

Insured notified Royal of the NAACP action and requested defense and indemnification, claiming that the complaint fell under the "bodily injury" coverage provided by the liability insurance. Royal retained the New York City law firm of Leahey & Johnson to represent Insured in the NAACP action; choosing this firm because of its expertise and past representation of gun industry defendants in a similar action brought by the NAACP. Royal believed that Insured would fair

seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

&ast; &ast; &ast;

b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period.
Reproduced Record (R.R.) 2706a–07a.

better with independent counsel than in a group defense assembled by other defendants.

In a letter dated June 15, 2001, Royal informed Insured that it had assigned Leahey & Johnson to provide a defense in the NAACP action, and that it was examining available coverage under the insurance policy. Royal further advised that it was providing Insured with a defense under a full reservation of rights, including the right "to seek reimbursement for any and all defense costs ultimately determined not to be covered." R.R. 2703a. Insured expressed concern that if Royal ultimately determined there was no coverage available to Insured, then it might be less costly for Insured to join a defense group with other defendants rather than proceed with Leahey & Johnson. Royal responded that Insured had the right to retain its own counsel to represent its uninsured interests or to continue to permit Leahey & Johnson to represent their mutual interests. Insured did not obtain independent counsel.

By telephone and letter dated July 12, 2001, Royal indicated that its preliminary assessment revealed that it may be under no duty to defend or indemnify Insured, and that, again, Royal specifically reserved the right to disclaim defense and indemnity based upon the terms of the insurance contract. Royal pledged that during its investigation, it would participate in advancing reasonable and necessary defense costs in the NAACP action with the express reservation that Royal "may seek reimbursement of some or all of these costs in a future declaratory judgment action...." R.R. 2706a. On July 18, 2001, Royal yet again informed Insured that it would continue to pay for Insured's defense until it made its final coverage determination, but that it reserved the right to seek reimbursement for "any and all of the defense costs it incurs in the defense of this matter." R.R. 2718a.[3] By letter dated August 3, 2001, Royal once more indicated that it would fund the defense until it determined the coverage issue. In this letter, however, unlike the letters of July 12 and July 18, 2001, it specifically informed Insured that it would not seek to recover

3. In August, 2001, Royal entered into an agreement with AIG where AIG agreed to pay half of Insured's defense costs in the NAACP action.

the defense costs incurred before a final determination of coverage was made, by either Royal or a court, whichever occurred first.

On September 7, 2001, Royal issued a final coverage determination letter informing Insured that pursuant to their insurance contract, Royal "may be under no duty to defend or indemnify [Insured]." R.R. 2724a. Royal further advised that it was contemplating filing a declaratory judgment action to seek a declaration that it was under no duty to defend, and that it may seek reimbursement for some or all of the defense costs incurred after the filing of the declaratory judgment action. Shortly thereafter, on September 12, 2001, Royal followed through and filed a declaratory judgment action seeking a determination that it had no duty to defend or indemnify Insured for the claims asserted in the NAACP action because the action did not allege or involve "bodily injury" as defined in the policy. In due course, on July 16, 2002, Royal moved for summary judgment and requested reimbursement for "fees and costs paid to or on behalf of [Insured] in connection with the defense of the NAACP action incurred and/or paid after the date of the filling of this declaratory judgment action, i.e., September 12, 2001." R.R. 164–65a.

On February 25, 2003, the trial court granted summary judgment in Royal's favor. To determine whether Royal had an obligation to defend the NAACP claim against Insured, the trial court first ascertained the scope of the insurance coverage granted by the policy. See Wagner v. Erie Ins. Co., 801 A.2d 1226, 1234 (Pa.Super.2002) ("The insurer's duty to defend the insured is dependent upon the coverage afforded by the insured's policy."). Reviewing the policy, the trial court determined that the bodily injury portion was designed to compensate a claimant for damages that result from injury to one's physical condition. Next, the trial court looked to the allegations set forth in the NAACP complaint to determine if they set forth an injury that was actually or potentially within the scope of the policy. See id. It concluded that the remedy sought in the NAACP action was not the award of damages

for bodily injury, but, rather, contributions to a fund for the purpose of the education, supervision, and regulation of gun dealers.[4] Thus, the court found that it was clear that the relief sought in the complaint did not fall under the protections of the policy and Royal was not required to defend Insured. The order did not address Royal's summary judgment request for reimbursement of previously expended costs of defense.

Insured appealed the trial court's grant of summary judgment to the Superior Court, which affirmed on April 23, 2004.[5] *American and Foreign Ins. et al. v. Jerry's Sport Center, Inc., et al.*, 463 MDA 2003, 852 A.2d 1241 (Pa.Super. April 23, 2004), R.R. 1330a. The Superior Court held that the trial court was correct that the complaint sought equitable relief and did not trigger coverage provided by the Royal policy for bodily injury. R.R. at 1337a.

Thereafter, before the trial court, Royal sought reimbursement of defense fees expended on Insured's behalf in the NAACP ʻaction from the date Royal filed the declaratory judgment action on September 12, 2001.[6] R.R. 849a. On August 2, 2004, the trial court found that Royal was entitled to the remedy of restitution, based on the equitable doctrine of unjust enrichment.[7] The court specifically found that Royal conferred the benefits of a legal defense upon Insured, that Insured retained those benefits, and that to allow Insured to

4. Although we find this holding suspect, it is not before us for review.

5. Several days later, Leahey & Johnson obtained summary judgment for Insured in the NAACP action, resulting in Insured's dismissal from the underlying litigation before trial.

6. In its motion for reimbursement, Royal requested to be reimbursed for defense costs from the date it filed its declaratory judgment action on September 12, 2001. The trial court relied on September 7, 2001 as the relevant date, as that was the day Royal issued its final coverage determination letter.

7. Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, for which the beneficiary must make restitution. Black's Law Dictionary (8th ed. 2004). An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443, 448 (1969).

accept and retain those benefits without payment would unjustly enrich Insured. The court scheduled a hearing on the issue of *quantum meruit.*[8] Following two hearings on this issue, the trial court entered a verdict in favor of Royal of $309,216, plus pre-judgment interest.

Insured appealed to the Superior Court, arguing that the trial court erred in finding unjust enrichment that entitled Royal to recoup the defense costs where the parties' relationship was governed by a written insurance contract that was silent on the issue of reimbursement of defense fees. A panel of the Superior Court agreed with Insured and reversed the trial court. *American and Foreign Ins. et al. v. Jerry's Sport Center et al.*, 948 A.2d 834 (Pa.Super.2008). The Superior Court observed a split in jurisdictions between the "majority view," those courts that have found a right of reimbursement based on a reservation of rights letter, *e.g., Buss v. Superior Court,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997), and the "minority view," which includes those courts that have found no such right to reimbursement absent an express provision allowing reimbursement in the written insurance contract, *e.g., Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213 (3d Cir.1989) and *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.,* 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092 (2005). Considering these two approaches, the Superior Court was more persuaded by the *Terra Nova* line of cases. Consistent with *Terra Nova,* the Superior Court accepted Insured's argument that allowing reimbursement pursuant to Royal's reservation of rights letters amounted to an impermissible, unilateral modification of the written insurance contract.

According to the Superior Court, an insurer's duty to defend arises when a potentially covered claim becomes apparent to the insurer, and not later when a court determines actual coverage in a subsequent declaratory judgment action. *Amer-*

8. *Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services. Black's Law Dictionary (8th ed. 2004). *See also Commonwealth Dept. of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779, 782 (1979) (*quantum meruit* is "the reasonable value of the services performed").

*ican and Foreign Ins.,* 948 A.2d at 846–47 (citing *Erie Ins. Exch. v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348 (1996), and *Heffernan & Co. v. Hartford Ins. Co. of Am.,* 418 Pa.Super. 326, 614 A.2d 295 (1992)). Thus, according to the Superior Court's examination of the policy language in the instant case, not only did Royal have a duty to defend, it had " 'the right ... to defend the insured against any 'suit' seeking' damages for bodily injury." *American and Foreign Ins.,* 948 A.2d at 847. Royal exercised this duty and right by selecting Leahey & Johnson to represent Insured. The Superior Court observed that by undertaking the right to defend Insured, Royal benefited by preserving its right to control the defense and to take actions to mitigate any future indemnification responsibilities. *Id.* at 848 (citing *Terra Nova,* 887 F.2d at 1219–20, and *Shoshone First Bank v. Pacific Employers Ins. Co.,* 2 P.3d 510, 516 (Wyo.2000)).

Accordingly, the Superior Court concluded that the trial court erred as a matter of law by concluding that Royal's undertaking of the defense pursuant to its reservation of rights letter unjustly enriched Insured, and that Royal was entitled to reimbursement of attorneys fees in *quantum meruit.* Rather, according to the Superior Court, the written insurance contract, which did not contemplate a right to reimbursement, controlled the rights of the parties, and was not affected by Royal's attempted unilateral modification.

■ We granted allocatur to decide whether an insurer is entitled to reimbursement of defense costs when a court has determined that the insurer had no duty to defend the insured and the insurer has claimed a right to reimbursement only in a series of reservation of rights letters. The propriety of the trial court's order reimbursing Royal for defense costs under Royal's purported reservation of rights presents a question of law, over which our scope of review is plenary and our standard of review is *de novo. See Gillette v. Wurst,* 594 Pa. 544, 937 A.2d 430, 435 (2007).

■ Royal's first argument is that the NAACP claim was not potentially covered, and therefore never triggered its duty

to defend, as demonstrated by the trial court's declaratory judgment holding that the claim was not within the scope of coverage. Royal refers to the axiom that the duty to defend is triggered when a claim against the insured is potentially covered by the insurance policy. *See Casper v. Am. Guar. & Liab. Ins. Co.,* 408 Pa. 426, 184 A.2d 247, 249 (1962) (holding that where the acts complained of in the complaint cannot be construed as alleging damages covered by the insurance policy, the claims were not potentially within the scope of the policy and the insurer was under no duty to defend); *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363 (1987) ("If the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover."). In this case, according to Royal, we know that the NAACP claim against Insured was not potentially covered because, in the declaratory judgment action, the trial court held that Royal had no duty to defend. Royal argues that the only way the trial court could have concluded it had no duty to defend was to find, implicitly, that the NAACP claim was not potentially covered.

Royal asserts that the question of whether a claim is potentially covered, and, therefore, whether there is a duty to defend, is a question that can only be answered by the courts, not the insurance company. In this regard, according to Royal, whether an insurer initially provided a defense under the belief that a claim was potentially covered is not relevant. Essentially, Royal believes that it is inconsequential that its representatives may have thought the claims alleged against Insured were potentially covered when Insured initially requested defense and indemnification. All that matters now, according to Royal, is that the trial court held in the declaratory judgment action that the claims were not covered and Royal had no duty to defend; a holding affirmed by the Superior Court on appeal. According to this argument, the trial court's declaratory judgment determination retroactively nullified any consequence of Royal's initial determination that

the claims may have been potentially covered. Royal argues that the Superior Court's affirmance in the declaratory judgment action precluded that court from holding in the instant case that the claim was potentially covered.

Building on its argument that the NAACP claim was not potentially covered, Royal urges us to hold that when an insurer defends a suit against the insured that is not "potentially covered," and has reserved its right to reimbursement of defense costs, then the insurer is entitled to reimbursement from the insured. According to Royal, the majority of jurisdictions that have addressed an insurer's request for reimbursement of defense costs for claims that were not potentially covered have ordered reimbursement. *See, e.g., Buss*, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766.[9] This is because where a claim is not even potentially covered, there is no duty to defend.

Royal maintains that where there is no duty to defend, the law of contracts and the equitable theory of unjust enrichment direct that the insurer must be reimbursed. Specifically, Royal claims that although the insurance policy did not create

9. According to Royal, other jurisdictions follow *Buss* or its rationale and permit reimbursement where a court has determined that the claim is not covered and an insurer has explicitly reserved its right to seek reimbursement. *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 31 Cal.Rptr.3d 147, 115 P.3d 460 (2005); *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 264 Conn. 688, 826 A.2d 107 (2003); *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So.2d 1034, 1039 (Fla.Dist.Ct.App.2000); *Scottsdale Ins. Co. v. Sullivan Prop., Inc.*, 2007 WL 2247795 (D.Haw.2007); *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 2007 WL 1585542 (E.D.Tenn.2007); *Nat'l Union Fire Ins. Co. v. Guam Hous. and Urban Renewal Auth.*, 2003 WL 22497996 (Guam 2003). *See also United Nat. Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir.2002); *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639 (D.C.Cir.1996); *Nobel Ins. Co. v. Austin Powder Co.*, 256 F.Supp.2d 937 (W.D.Ark.2003); *Resure, Inc. v. Chem. Distrib., Inc.*, 927 F.Supp. 190 (M.D.La.1996); *Knapp v. Commonwealth Land Title Ins. Co., Inc.*, 932 F.Supp. 1169 (D.Minn.1996); *Gotham Ins. Co. v. GLNX, Inc.*, 1993 WL 312243 (S.D.N.Y.1993); *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083 (Colo.1991); *Jim Black & Assoc., Inc. v. Transcontinental Ins. Co.*, 932 So.2d 516 (Fla.Dist.Ct.App.2006); *Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.*, 326 Mont. 174, 108 P.3d 469 (2005); *Hebela v. Healthcare Ins. Co.*, 370 N.J.Super. 260, 851 A.2d 75 (2004).

a contractual right to reimbursement, the reservation of rights letters created a contract implied-in-fact,[10] which vests in Royal a right to reimbursement of defense costs expended to defend a claim that was not potentially covered. Having accepted the defense provided by Royal with full notice of Royal's reservation of its right to seek reimbursement, Royal argues Insured is now obligated to reimburse Royal for the costs of defense. A contrary holding, it argues, would grant Insured a benefit not contemplated by the insurance contract.

Royal also invokes the remedy of restitution based on the equitable theory of unjust enrichment to claim a right to be reimbursed. *See Buss,* 65 Cal.Rptr.2d 366, 939 P.2d at 776 (holding that where an insurer did not have a duty to defend the insured as to claims that were not potentially covered, and the insured had not paid premiums for the defense costs of non-covered claims, then the insurer had a right to reimbursement implied in law, regardless of whether it had a contractual right in the policy). Applying this equitable principal, Royal argues that Insured has been unjustly enriched by Royal's provision of a defense for a claim that the trial court and the Superior Court have determined was not covered by the insurance contract. Royal argues that permitting restitution leaves Insured no worse off than if it had retained its own counsel to defend it in the NAACP action.

According to Royal, the theory of unjust enrichment applies here independent of the written insurance policy between the parties. Royal argues that where a party performs services outside the scope of an express contract, that party may assert a claim for unjust enrichment under Pennsylvania law. *See Drysdale v. Woerth,* 153 F.Supp.2d 678, 687 (E.D.Pa.2001); *Allied Fire & Safety Equip. Co. v. Dick Enter., Inc.,* 886 F.Supp. 491, 495 (E.D.Pa.1995); *Chesney v. Stevens,* 435 Pa.Super. 71, 644 A.2d 1240, 1242 (1994). Applying this principal, Royal argues that because the defense costs expend-

10. An implied-in-fact contract is a contract that the parties "presumably intended as their tacit understanding, as inferred from their conduct and other circumstances." Black's Law Dictionary (8th ed. 2004).

ed in connection with the NAACP action were outside the scope of the insurance contract, Royal can recover based on the theory of unjust enrichment.

Finally, Royal argues that permitting it to be reimbursed in these circumstances will properly induce insurers to provide a defense under a reservation of rights where there is a dispute between the insurer and the insured about whether a claim is covered. Otherwise, Royal speculates that an insurer will be tempted to refuse to defend an action where there is a coverage dispute. It further asserts that denying reimbursement will lead to higher premiums for all policyholders.[11]

Insured first disagrees with Royal's argument about whether the claim was potentially covered and when the duty to defend arose. Specifically, Insured argues that the claims in the NAACP action were potentially covered under the insurance contract, thus triggering Royal's duty to defend, notwithstanding the courts' subsequent declaratory judgment that the claims were not within the policy's protections. Insured argues that Royal's duty to defend was triggered when it was faced with what it characterized (in its own communications with Insured) as a potentially covered claim. Recognizing that the claim was potentially covered, Royal provided a defense at least partially to protect itself from liability. Although a court later held that the claim was not covered, Insured argues that there was a real question about coverage prior to the court's determination. Insured argues that if an insurer needed a court determination before it knew whether to provide a defense for claims that may or may not be covered, then every questionable claim tendered to an insurer would require a declaratory judgment action prior to the provision of a defense.

11. The American Insurance Association (AIA) and the National Association of Mutual Insurance Companies (NAMIC) filed an *amicus curiae* brief on behalf of Royal. The AIA and NAMIC argue that affirming the Superior Court's decision would greatly complicate Pennsylvania law governing the duty to defend. The Complex Insurance Claims Litigation Association (CICLA) also filed an amicus curiae brief on behalf of Royal, echoing the sentiments expressed by AIA and NAMIC.

According to Insured, it is the insurer's duty to decide whether to defend, and if the insurer believes there is no duty to defend, then it should deny its insured a defense at the outset instead of defending and later attempting to recoup defense costs. Insured argues that where the insurer is uncertain, it should provide a defense while seeking a declaratory judgment as to its coverage obligations under the policy, but it is not entitled for reimbursement during any period of uncertainty.

Next, Insured argues that Royal has no contractual right to reimbursement arising from either the insurance contract or the reservation of rights letters. Rather, according to Insured, the parties' rights and obligations are defined by the insurance contract, and given the silence in the insurance contract on the matter of reimbursement, allowing reimbursement pursuant to Royal's reservation of rights letters amounts to an impermissible, unilateral modification of the written insurance contract.

Insured next argues that because the parties' relationship was governed by a written insurance contract, which did not provide for reimbursement of defense costs for claims ultimately determined not to be covered, Royal is not entitled to reimbursement under the equitable theory of unjust enrichment. *See Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.1999) (holding that unjust enrichment and the remedy of *quantum meruit* cannot be found where there is a written or express contract between the parties); *Roman Mosaic & Tile Co. v. Vollrath,* 226 Pa.Super. 215, 313 A.2d 305, 307 (1973) ("The doctrine of unjust enrichment is clearly 'inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" (internal citations omitted)).

Insured further asserts that Royal defended Insured for its own benefit at least as much as for Insured's, *see Terra Nova,* 887 F.2d 1213 (denying reimbursement and reasoning that if the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself), noting that Royal protected itself against potential indemnity

exposure by exercising its right to hire its choice of law firm; a right it would have lost if it disclaimed coverage and refused to defend. Insured further observes that by defending the claim, Royal was also protecting itself from the potential of a bad faith claim by Insured if a court ultimately found the claim to be covered and that Royal failed to defend. In such circumstances, Insured argues, there is nothing unjust about Royal's payment of defense costs, and, according to Insured, although it benefited from the defense, it was not unjustly enriched by it. Insured asserts that the doctrine of unjust enrichment does not apply simply because it may also have benefited from Royal's actions. *See Walter v. Magee–Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400 (Pa.Super.2005).

Insured notes that in recent years, a growing number of jurisdictions have rejected *Buss* and adopted the so-called minority view espoused in *Terra Nova*, suggesting that this trend may, in fact, soon make *Terra Nova* the majority view. Pursuant to this line of cases, insurers are not entitled to reimbursement of defense costs for non-covered claims. *See Terra Nova*, 887 F.2d 1213; *Am. Modern Home Ins. Co. v. Reeds at Bayview Mobile Home Park, LLC*, 176 Fed.Appx. 363 (4th Cir.2006); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919 (8th Cir.1998); *Pekin Ins. Co. v. Tysa, Inc.*, 2006 WL 3827232 (S.D.Iowa 2006); *Employers Mut. Cas. Co. v. Indus. Rubber Prod., Inc.*, 2006 WL 453207 (D.Minn. 2006); *General Agents*, 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092; *Shoshone First Bank*, 2 P.3d at 510.

United Policyholders (UP) filed an *amicus curiae* brief in support of Insured. UP argues that a claim is potentially covered, thus triggering the duty to defend, when there is uncertainty as to coverage. Once this uncertainty is eliminated through a declaratory judgment action, UP argues that it does not retroactively eliminate the ambiguity that triggered the insurer's duty to defend during the period of uncertainty. Air Products and Chemicals, Inc., has also filed an *amicus curiae* brief on behalf of Insured. It argues that reimbursement is a matter for insurance policy language, not litigation. Recognizing a right to reimbursement outside of the written

insurance contract would, according to Air Products, empower each insurer to design its own right to reimbursement as it sees fit. Air Products further argues that in the years since *Buss* and *Terra Nova,* the insurance industry has had ample time to develop a policy provision that would address the recoupment of defense costs through contracts of insurance, but it has not done so. Air Products suggests that if policyholders had found it to be in their interest to agree to a right of reimbursement, and if insurance regulators had found it to be in the interest of the public and policyholders to approve such a provision, then such provisions would now be common.

Because the parties rely extensively on jurisprudence from other jurisdictions, our analysis begins with an overview of the cases relied upon by Royal and Insured, respectively. Our analysis will continue with a review, generally, of the duty to defend in Pennsylvania and an examination of the issue presented in light of the competing views across the country and within the law of Pennsylvania.

As noted, Royal urges us to follow the California case of *Buss* and those cases relying on it, which generally hold that an insurer may recover defense costs from its insured where the insurer agrees to provide the insured a defense pursuant to an express reservation of the right to recover defense costs, claimed in correspondence with the insured, the insured accepts the defense, and a court subsequently finds that the insurer did not owe the insured a defense. In *Buss,* the California Supreme Court held that an insurer had a right of reimbursement of defense costs under the theory of unjust enrichment for claims later held to be outside of policy coverage. *Buss,* 65 Cal.Rptr.2d 366, 939 P.2d at 770.

*Buss* arose following a lawsuit in which only one of 27 claims was potentially covered (a "mixed action"). The insurer provided Buss, its insured, with a defense as to the entire suit pursuant to a reservation of rights, including the alleged right to be reimbursed for all defense costs if it was later determined that there was no coverage for the one potentially covered claim, or, indeed, for any of the 27 claims. Buss ultimately settled the underlying action. In a subsequent

action for declaratory relief brought by the insurer seeking reimbursement for the cost of defense, the trial court denied Buss's motion for summary judgment on the question of whether it had to reimburse its insurer for the cost of defending all 27 claims in the underlying action. The intermediate appellate court affirmed, finding that because one of the 27 claims was potentially covered, the insurer was not entitled to be reimbursed for this claim. The appellate court held, however, that the insurer could seek reimbursement for the cost of defending the 26 claims that were never even potentially covered.

On appeal, the California Supreme Court affirmed and held that because the insurer's duty to defend extended to any claims at least potentially covered, the insurer was not entitled to seek reimbursement of defense costs for a potentially covered claim. *Buss*, 65 Cal.Rptr.2d 366, 939 P.2d at 775. The court held that the insurer may, however, seek reimbursement of defense costs for the 26 claims that were not potentially covered. *Id.*, 65 Cal.Rptr.2d 366, 939 P.2d at 776. The court explained that under the policy, the insurer had no duty to defend as to the 26 claims that were not potentially covered. In support of its decision, the California Supreme Court noted that the insurer had not been paid premiums by the insured with regard to those claims, and did not bargain to bear the cost of defending claims that were not potentially covered. *Id.* According to the court, the insurer "has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual." *Id.* The court held that the right ran against the person who was unjustly enriched and in favor of the person who suffered loss thereby. *Id.*, 65 Cal.Rptr.2d 366, 939 P.2d at 777 ("The 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is ... 'unjust' "). Therefore, the insurer had no right to reimbursement of the potentially covered claim, but had such a right as to claims that were not potentially covered. It is worthy of emphasis that with regard to the 26 claims for which there

was a right to reimbursement, there was never any dispute that the claims were not potentially covered.

After *Buss*, insurers repeatedly acted to reserve a right to reimbursement of defense costs, and many courts ruled in the insurer's favor, usually based on contractual and/or equitable principles.[12] Primarily, most courts of this view determined that the insurance policy is inapplicable because the claim for which defense is provided is not covered, and the reservation of rights letter was an offer to create a new contract with regard to non-covered claims that the insured accepted when it accepted the insurer's payment of defense costs. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir.2002); *Underwriters at Lloyds London v. STD Enters., Inc.*, 395 F.Supp.2d 1142, 1150–51 (M.D.Fla.2005); *Grinnell Mut. Reinsurance Co. v. Shierk*, 996 F.Supp. 836, 839 (S.D.Ill. 1998), *rejected by Gen. Agents Ins. Co.*, 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092; *Jim Black & Assoc., Inc. v. Transcon. Ins. Co.*, 932 So.2d 516, 518 (Fla.Dist.Ct.App.2006); *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So.2d 1034, 1039 (Fla.Dist.Ct.App.2000); *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 326 Mont. 174, 108 P.3d 469, 480 (2005).

Additionally, courts following *Buss* and its rationale apply the equitable theory of unjust enrichment and the remedy of

12. *See, e.g., United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir.2002); *Forum Ins. Co. v. County of Nye*, 1994 WL 241384, at *3 (9th Cir.1994); *Unionamerica Ins. Co. Ltd. v. Gen. Star Indem. Co.*, 2005 WL 757386, at *8 (D.Alaska 2005); *Nobel Ins. Co.*, 256 F.Supp.2d at 940; *North Atlantic Cas. and Sur. Ins. Co. v. William D.*, 743 F.Supp. 1361 (N.D.Cal.1990); *First Fed. Sav. & Loan Ass'n of Fargo N.D. v. Transamerica Title Ins. Co.*, 793 F.Supp. 265, 269 (D.Colo.1992), *aff'd*, 19 F.3d 528 (10th Cir.1994); *Resure, Inc.*, 927 F.Supp. 190, *aff'd*, 114 F.3d 1184 (5th Cir.1997); *Knapp*, 932 F.Supp. at 1172; *Gotham Ins. Co.*, 1993 WL 312243, at *5; *Melton Truck Lines, Inc. v. Indem. Ins. Co. of N. Am.*, 2006 WL 1876528 (N.D.Okla.2006); *Nationwide Mut. Ins. Co. v. Flagg*, 789 A.2d 586, 597 (Del.Super.Ct.2001); *Colony Ins. Co.*, 777 So.2d 1034; *Travelers Cas. & Sur. Co.*, 108 P.3d at 480; *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 377 F.Supp.2d 719 (D.Minn. 2005), *aff'd*, 457 F.3d 766 (8th Cir.2006). *See also* Angela R. Elbert and Stanley C. Nardoni, *Buss Stop: A Policy Language Based Analysis*, 13 Conn. Ins. L.J. 61 (2006–07) (tracing the history of the reimbursement issue following *Buss* and advocating for a policy language approach instead of *Buss's* implied right to reimbursement).

restitution in *quantum meruit*, expressing an interest in disallowing the insured from being unjustly enriched when the insurer paid defense costs for non-covered claims. *See Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 106 Cal.Rptr.2d 535, 22 P.3d 313, 321 (2001); *Hebela v. Healthcare Ins. Co.*, 370 N.J.Super. 260, 851 A.2d 75, 86 (2004). *See also Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc.*, 2004 WL 1877916, at *5 (Mo.Ct.App.2004) ("When defense and indemnity are conditioned on certain facts, reimbursement is expected if those facts are untrue."), *rev'd on other grounds*, 163 S.W.3d 910 (Mo.2005).

There is another view, however, endorsed by a growing number of courts that have refused to follow the reasoning of *Buss*, and have not permitted an insurer to obtain reimbursement of defense costs for non-covered claims.[13] According to these courts, reimbursement is inconsistent with the broad duty to defend. *See Perdue Farms, Inc. v. Travelers Cas. and Surety Co. Of Am.*, 448 F.3d 252 (4th Cir.2006); *Liberty Mut. Ins. Co.*, 153 F.3d 919. Moreover, consistent with this broad duty to defend, several courts have denied reimbursement based upon a reservation of rights letter by finding that an insurer voluntarily undertook the defense for its own interest, even though the payments were made under some rudimenta-

13. *See, e.g., Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 35 (1st Cir.1997); *Terra Nova*, 887 F.2d 1213; *Am. Modern Home Ins. Co. v. Reeds at Bayview Mobile Home Park, LLC*, 176 Fed.Appx. 363, 366 (4th Cir.2006); *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258, 259 (4th Cir.2006); *Riley Stoker Corp. v. Fid. & Guar. Ins. Underwriters, Inc.*, 26 F.3d 581, 589 (5th Cir.1994); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir.1998); *Pekin Ins. Co. v. Tysa, Inc.*, 2006 WL 3827232 (S.D.Iowa 2006); *Dash v. Chicago Ins. Co.*, 2004 WL 1932760, at *10 (D.Mass.2004); *Employers Mut. Cas. Co. v. Indus. Rubber Prods., Inc.*, 2006 WL 453207, at *6 (D.Minn.2006); *Mobile Telecomm. Techs. Corp. v. Aetna Cas. & Sur. Co.*, 962 F.Supp. 952, 956 (S.D.Miss.1997); *Med. Protective Co. v. McMillan*, 2002 WL 31990490, at *7 (W.D.Va.2002); *Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So.2d 534, 537 (Ala.1995); *Gen. Agents Ins. Co.*, 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092; *Yount v. Maisano*, 627 So.2d 148, 153 (La.1993); *Med. Malpractice Joint Underwriting Ass'n of Mass. v. Goldberg*, 425 Mass. 46, 680 N.E.2d 1121, 1128 (1997); *LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2006 WL 689109 (C.P. Philadelphia 2006); *Shoshone First Bank*, 2 P.3d 510, 513–14; Elbert & Nardoni, *Buss Stop*, 13 Conn. Ins. L.J. 61.

ry form of protestation. *Terra Nova,* 887 F.2d at 1219–20; *Med. Protective Co. v. McMillan,* 2002 WL 31990490 (W.D.Va. 2002); *Mt. Airy Ins. Co. v. Doe Law Firm,* 668 So.2d 534, 538 (Ala.1995).

Additionally, several courts have rejected *Buss* by finding that a unilateral reservation of rights letter cannot create rights not contained in the insurance policy itself. *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.,* 246 S.W.3d 42 (Tex.2008); *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County,* 52 S.W.3d 128, 131 (Tex.2000); *Shoshone First Bank,* 2 P.3d 510; *LA Weight Loss Centers, Inc., v. Lexington Ins. Co.,* 2006 WL 689109, *5 (C.P. Philadelphia 2006). Finally, courts have rejected *Buss* by finding that concerns of equity and fairness weigh against reimbursement, because an insurer benefits unfairly if it can hedge on its defense obligations by reserving its right to reimbursement while potentially controlling the defense and avoiding a bad faith claim. *See United Nat'l Ins. Co.,* 309 F.3d 914; *Shoshone First Bank,* 2 P.3d 510.

In a case from Illinois with strikingly similar facts to the case before us, the insured, Midwest, was sued by the City of Chicago for creating a public nuisance by selling guns to inappropriate purchasers. *General Agents,* 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092. Midwest requested defense and indemnification from its insurer, General Agents, which indicated in a reservation of rights letter that it did not believe the claim was covered, but would provide a defense under a reservation of its asserted right to claim reimbursement if a court later determined the claim was not covered. *Id.* at 1093. In the subsequent declaratory judgment action, the trial court agreed with the insurer that the claim was not covered. *Id.* at 1094. General Agents filed a motion in the trial court to recover the defense costs it had paid to defend Midwest in the underlying action based on its reservation of rights letter. Midwest argued that the insurer could not reserve a right to reimbursement that did not exist in the written insurance contract. The insurer responded that because the trial court

held in the declaratory judgment action that there was no policy coverage, the insurance policy should not control.

The Supreme Court of Illinois denied the insurer's request for reimbursement. The court acknowledged the broad duty to defend in Illinois, which requires an insurer to defend potentially covered claims. *Id.*, at 1098. The court held that as a matter of public policy, it could not condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owed no duty to defend. The court explained:

> We recognize that courts have found an implied agreement where the insured accepts the insurer's payment of defense costs despite the insurer's reservation of a right to reimbursement of defense costs. However ... recognizing such an implied agreement effectively places the insured in the position of making a Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer.

*Id.* at 1102.

The court in *General Agents* relied on *Terra Nova*, which expressly prohibited the insurer's claimed right to reimbursement to recover defense costs if it deemed a claim potentially covered and provided coverage until it was later determined in a declaratory judgment action that there was no coverage. In *Terra Nova*, the court explained that permitting recovery would be inconsistent with an insurer's duty to defend:

> Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in

protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

*Terra Nova,* 887 F.2d at 1219–20. *See also Shoshone First Bank,* 2 P.3d at 516 (rejecting *Buss* and holding that an insurer cannot be reimbursed for uncovered claims in a mixed action case, in part because the policy language did not make such a distinction or allow for any sort of allocation in its duty to defend requirement); *LA Weight Loss Centers,* 2006 WL 689109 (applying *Terra Nova* to bar reimbursement, stating that the insurer cannot unilaterally amend the policy via a reservation of rights letter, and that the insured is not unjustly enriched when its insurer tenders a defense to protect its own interests).

Carefully considering the competing views espoused in these two lines of cases, we conclude that the reasoning of *General Agents* and *Terra Nova* are more consistent with the broad duty to defend under Pennsylvania law, discussed below, when viewed in light of the policy language of the parties' insurance contract. Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. *See Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). Such intent is to be inferred from the written provisions of the contract. *See id.* If doubt or ambiguity exists it should be resolved in insured's favor. *See Prudential Prop. & Cas. Ins. Co. v. Sartno,* 588 Pa. 205, 903 A.2d 1170, 1174 (2006); *Standard Venetian Blind,* 469 A.2d at 566.

An insurer's duty to defend is broader than its duty to indemnify. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006); *General Acc. Inc. Co. of America v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997); *J.H. France Refractories v. Allstate Ins. Co.,* 534 Pa. 29, 626 A.2d 502, 510 (1993). It is a distinct obligation, separate and apart from the insurer's duty to provide coverage. *Erie Ins. Exch. v. Transamerica Ins. Co.,*

516 Pa. 574, 533 A.2d 1363 (1987). An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. *Id.* at 1368 (describing the duty to defend as arising "whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." (emphasis in original)); *Gedeon v. State Farm Mut. Auto. Ins. Co.,* 410 Pa. 55, 188 A.2d 320 (1963) (same); *Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 488 (1959) ("It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril."). As long as the complaint "might or might not" fall within the policy's coverage, the insurance company is obliged to defend. *Casper,* 408 Pa. 426, 184 A.2d 247 (quoting Judge Learned Hand's assertion in *Lee v. Aetna Casualty & Surety Company,* 178 F.2d 750, 752 (2d Cir.1949)); *Cadwallader,* 152 A.2d at 488 (same). Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. *See Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290 (2007) ("The language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation."). An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. *See Allen,* 692 A.2d at 1094 ("[T]he obligation to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action. . . ."); *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246, 246–47 (1988) ("[I]n determining the duty to defend, the complaint claiming damages must be compared to the policy

... the language of the policy and the allegations of the complaint must be construed together to determine the insurer's obligation."); *Springfield Tp. et al. v. Indemnity Ins. Co. of North America*, 361 Pa. 461, 64 A.2d 761 (1949) ("It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend."). In making this determination, the "factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir.1999) (citing *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1052 (1992)). Indeed, the duty to defend is not limited to meritorious actions; it even extends to actions that are "groundless, false, or fraudulent" as long as there exists the possibility that the allegations implicate coverage. *Transamerica*, 533 A.2d at 1368; *Gedeon*, 188 A.2d at 321.

We agree with Insured that whether a complaint raises a claim against an insured that is potentially covered is a question to be answered by the insurer in the first instance, upon receiving notice of the complaint by the insured. Although the question of whether the claim is covered (and therefore triggers the insurer's duty to defend) may be difficult, it is the insurer's duty to make that decision. *See Shoshone First Bank*, 2 P.3d at 516 (holding that the insurer must make the decision about whether there is a duty to defend). Insurers are in the business of making this decision. The insurer's duty to defend exists until the claim is confined to a recovery that the policy does not cover. *Transamerica*, 533 A.2d at 1368; *Allen*, 692 A.2d at 1095 ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover."). Where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its

own peril. *Casper*, 408 Pa. 426, 184 A.2d 247 (1962) (quoting *Cadwallader*, 152 A.2d at 488).

In some circumstances, an insurance company may face a difficult decision as to whether a claim falls, or potentially falls, within the scope of the insurance policy. However, it is a decision the insurer must make. If it believes there is no possibility of coverage, then it should deny its insured a defense because the insurer will never be liable for any settlement or judgment. *See Shoshone*, 2 P.3d at 510 (stating that where an insurer believes there is no coverage, it should deny a defense at the beginning). This would allow the insured to control its own defense without breaching its contractual obligation to be defended by the insurer. If, on the other hand, the insurer is uncertain about coverage, then it should provide a defense and seek declaratory judgment about coverage. *Id.*

In a declaratory judgment action to determine whether a claim is covered, the court resolves the question of coverage. *See Claypoole*, 673 A.2d at 355 ("An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions."). The court's role in the declaratory judgment action is to resolve the question of coverage to eliminate uncertainty. If the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend. The court's resolution of the question of coverage does not, however, retroactively eliminate the insurer's duty to defend the insured during the period of uncertainty. *See, e.g., Liberty Mut. Ins. Co.*, 153 F.3d at 924 (holding that an insurer remained obligated to defend as long as there was a question about coverage).

Here, Insured was obliged to notify Royal as soon as practicable of any "occurrence ... which *may* result in a claim." R.R. 995a (emphasis added). The insurance contract also provided that Royal would pay, with respect to "any suit against an Insured we defend ... [a]ll expenses we incur." R.R. 993a.[14] Royal received notice of the NAACP action and

14. Royal's obligation to pay, with respect to "any suit against an Insured we defend ... [a]ll expenses we incur" arguably answers the

Insured's request for defense and indemnification, and undertook an investigation into whether the claim was covered while it provided a defense. An examination of the insurance contract between the parties reveals that under the policy, Royal was obliged to pay damages because of bodily injury, and had the "right and duty to defend the insured against any 'suit' seeking those damages." R.R. 988a. The policy further provided that it had no duty to defend the insured against any suit seeking damages for bodily injury to which the insurance does not apply. *Id.* Pursuant to the contractual language, therefore, Royal had the right and the duty to defend covered claims for bodily injury against Insured, and no duty to defend non-covered claims.

It was not immediately apparent whether the claim against Insured for bodily injury was or was not covered. It was immediately apparent, however, that the claim might potentially be covered. That Royal was uncertain about coverage, or, more precisely, believed the claim against Insured in the NAACP action was potentially covered, is apparent from its action in furnishing a defense, and, indeed, insisting on peculiar counsel.[15] Under the policy, Royal had a right and duty to

question before us. Here, Royal defended Insured. It was, therefore, contractually obligated to pay all defense expenses it incurred. Regardless of whether it was obligated to defend Insured pursuant to the insurance contract, it did, in fact, provide a defense. Under the plain language of the contract, therefore, it was obligated to pay for the expenses it incurred in connection with the defense, an obligation that would be eviscerated if Insured had to reimburse Royal. *See* Elbert & Nardoni, *Buss Stop*, 13 Conn. Ins. L.J. at 95–96 ("[C]ontrary to what a reader may conclude from reviewing cases on both sides of the question, standard liability policies are not silent about allocation or recoupment. They expressly disclaim it.").

15. Royal's uncertainty in this regard is understandable. The NAACP action sought monetary damages for bodily injury; Royal insured against damages for bodily injury. Moreover, shortly after the complaint was filed the insurer of another defendant sought a declaratory judgment regarding its duty to defend its insured. *See Scottsdale Ins. Co. v. RSR Management Co.*, 2000 WL 1456954 (E.D.N.Y.2000). The judge in the declaratory judgment action, the same judge who presided over the NAACP action, which was not the judge who decided Royal's declaratory judgment action, found that Scottsdale Insurance had a duty to defend its insured in the NAACP action based on the policy

defend the insured against any action seeking damages for bodily injury. Facing uncertainty about coverage, Royal appropriately activated its right and met its duty to defend under the policy when it was presented with a claim that may or may not have been covered. At the same time, Royal appropriately exercised its right to seek a declaration that it had no duty to defend.

The trial court's subsequent declaratory judgment determination that the claim was not covered relieved Royal of having to defend the case going forward, but did not somehow nullify its initial determination that the claim was potentially covered. *See General Agents*, 293 Ill.Dec. 594, 828 N.E.2d at 1104 (finding that the insurer's obligation to defend existed while there was uncertainty about coverage); *Liberty Mut. Ins. Co.*, 153 F.3d 919 (concluding that an insurer had a duty to defend a claim until a court resolved the question of coverage and rejecting the insurer's argument that it was entitled to reimbursement of defense costs).

■■■ We therefore reject Royal's attempt to define its duty to defend based on the outcome of the declaratory judgment action. The broad duty to defend that exists in Pennsylvania encourages insurance companies to construe their insurance contract broadly and to defend all actions where there is any potential coverage. *Gedeon*, 188 A.2d at 321–22.[16] The so-called minority position articulated above is consistent with our longstanding common law rule that the duty to defend is broader than the duty to indemnify. *See Allen*, 692 A.2d at 1095 ("[T]he duty to defend is separate from and broader than the duty to indemnify."). Where the insurance contract is silent about the insurer's right to reimbursement of defense costs, permitting reimbursement for costs the insurer spent exercising its right and duty to defend potentially covered claims prior to a court's determination of coverage would be

language that Scottsdale would pay damages for bodily injury and the NAACP's complaint alleging bodily injury and monetary damages. *Id.*

**16.** Insurance companies are well aware of this, and presumably have built the costs of defense into their premium base. Thus, they are providing a service for which they have been compensated.

inconsistent with Pennsylvania law. It would amount to a retroactive erosion of the broad duty to defend in Pennsylvania by making the right and duty to defend contingent upon a court's determination that a complaint alleged covered claims, and would therefore narrow Pennsylvania's long-standing view that the duty to defend is broader than the duty to indemnify.

Because uncertainty existed about coverage when Royal initially provided a defense, it properly defended a potentially covered claim. Royal, therefore, would not be entitled to reimbursement even if we adopted the reasoning of *Buss.* There, one claim was potentially covered, and 26 were not, and there was no dispute about the potentiality for coverage. The court held that as to the claim that was potentially covered, the insurer had a duty to defend and was not, therefore, entitled to be reimbursed for the cost of defending that claim. Thus, because we find that the claim against Insured was potentially covered before the court definitively ruled it was not covered, Royal would not be entitled to reimbursement pursuant to *Buss.*

Moreover, Royal's contractual obligation to pay for the defense arose as a consequence of the rules of contract interpretation. It is undisputed that the policy did not contain a provision providing for reimbursement of defense costs under any circumstances. Thus, the right Royal attempts to assert in this case, the right to reimbursement, is not a right to which it is entitled based on the policy. We will therefore determine whether Royal, as it asserts, created a new contract through its reservation of rights letters.

We hold that it did not. Royal cannot employ a reservation of rights letter to reserve a right it does not have pursuant to the contract. As noted above, the policy here did not provide for a right of reimbursement of defense costs for non-covered claims. A reservation of rights letter asserts defenses and exclusions that are already set forth in the policy. *See* Black's Law Dictionary (8th ed. 2004) (defining a reservation-of-rights letter as "notice of an insurer's intention not to waive its contractual rights to contest coverage or to

apply an exclusion that negates an insured's claim."). We are persuaded that permitting reimbursement by reservation of rights, absent an insurance policy provision authorizing the right in the first place, is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. *See Am. Modern Home Ins. Co. v. Reeds at Bayview Mobile Home Park, LLC.,* 176 Fed.Appx. 363, 366 (4th Cir.2006) (addressing a similar argument and holding that because the insurer never had a right to reimbursement to begin with, its "repeated reservation of its asserted right to reimbursement is entirely inconsequential."); *General Agents,* 293 Ill.Dec. 594, 828 N.E.2d at 1102 ("As a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend."); *Shoshone First Bank,* 2 P.3d at 516 (refusing to permit a unilateral modification of an insurance contract via a reservation of rights letter); [17] A reservation of rights letter "does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide such a defense." *First Ins. Co. of Hawaii, Inc. v. State, by Minami,* 66 Haw. 413, 665 P.2d 648, 654 (1983). Absent the creation of a new contract through the reservation of rights letters, there is no contractual basis upon which to order Insured to reimburse Royal for defense costs.

Nor are we persuaded that there are any equitable bases upon which to grant a right to reimbursement. The doctrine of unjust enrichment contemplates that "[a] person who has been unjustly enriched at the expense of another must make restitution to the other." *Wilson Area School Dist. v. Skepton,* 586 Pa. 513, 895 A.2d 1250, 1254 (2006) (opinion announcing the judgment of the court). *See also Binns v. First National Bank of California, Pennsylvania,*

17. Royal inexplicably claims that failing to find a right to reimbursement would create obligations outside of the four corners of the insurance contract. On the contrary, recognizing a right not contained in the insurance contract based solely on a unilateral reservation of rights letter would create obligations beyond the parties' agreement.

367 Pa. 359, 80 A.2d 768, 775 (1951) (quoting Restatement (First) of Restitution § 1 (1937)).

Insured was not unjustly enriched by Royal's payment of defense costs. Royal had not only the duty to defend, but the right to defend under the insurance contract. This arrangement benefited both parties. The duty to defend benefited Insured to protect it from the cost of defense, while the right to defend allowed Royal to control the defense to protect itself against potential indemnity exposure. Although Royal argues that it did not control the defense, it is apparent that Royal selected the firm to represent Insured, and pragmatically made it very difficult for Insured to retain independent counsel. Specifically, in the letter of June 15, 2001, Royal conveyed that Insured could retain its own counsel to represent its uninsured interests, or to join with Leahey & Johnson to represent their mutual interests. At this point, where the claim was potentially covered, Insured would have been at risk of breaching the insurance contract if it had rejected Royal's defense and it was later determined that the claim was covered. Moreover, upon Royal's activation of its right to defend, Insured was obliged to cooperate with Royal in defending the action. R.R. 993a. Insured had no reasonable alternative except to proceed with Royal's chosen counsel. As the Superior Court noted, Royal's selection of counsel allowed it to monitor and review defense fees, compare them to Royal's preferred billing guidelines, and refer the invoices to a third-party auditor for scrutiny.

 As the Third Circuit explained in *Terra Nova*, an insurer faced with uncertainty about its duty to indemnify offers a defense under a reservation of rights "to avoid the risks that an inept or lackadaisical defense of the underlying action" may expose it to if it ultimately turns out there was a duty to indemnify. 887 F.2d at 1219. Royal's ability to choose counsel allowed it to mitigate any potential future indemnification obligations. *See General Agents*, 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092 (2005) (rejecting unjust enrichment argument and holding when the insurance company tenders a defense for its policyholder it is "protecting itself

at least as much as it is protecting its insured."). We further observe that by defending Insured, Royal was protecting itself from the potential of a bad faith claim. In order to ensure that insurance companies assume the defense whenever there is the potential for coverage, bad faith damages are imposed where the insurer, with no good cause, refuses to provide a defense. 42 Pa.C.S. § 8371; *Frog, Switch & Mfg.*, 193 F.3d 742. Royal may have been subject to a bad faith action if it did not defend and a court ultimately found coverage. Accordingly, if the insurer could recover defense costs from its insured, then the insured would be paying for the insurer to protect itself. *Terra Nova*, 887 F.2d at 1219. By providing a defense to Insured, therefore, Royal acted as much in its own interest as it did in the Insured's. It would be unjust to require Insured to reimburse Royal for the cost of the defense where Royal invoked its right to defend in part to protect its own interest.

Additionally, we agree with Insured's *amicus* that recognizing a right of reimbursement outside of the policy would empower each insurer to design its own right to reimbursement subject only to the insurer's designs. For example, an insurer could demand the right to reimbursement of all costs expended from the time it received notice of the underlying complaint until the court's declaratory judgment action, or it could claim the right for the period extending from its final determination until the court's declaratory judgment decision. This is, in fact, what occurred here. Royal initially claimed a right of reimbursement of all defense costs ultimately determined not to be covered, R.R. 2703a (letter of June 15, 2001), then modified this claimed right to reimbursement by stating that it would not seek reimbursement of costs incurred before it made its final coverage determination or a court concludes it was under no duty to defend, whichever occurred first, R.R. 2720a, and, finally, informing Insured that it may seek reimbursement for defense costs incurred after the filing of the declaratory judgment action, R.R. 2724a. A right of reimbursement outside of the four corners of the insurance con-

tract would open the door to this kind of maneuvering by insurance companies at their policyholders' expense.

We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters. Accordingly, we affirm the order of the Superior Court.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN, TODD, and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

SAYLOR, Justice, concurring.

I join the majority opinion, subject only to a few modest differences in reasoning. In particular, I am not fully in accord with the majority's depiction of litigation risk assessments by insurers. *See* Majority Opinion, at 608–12, 2 A.3d at 541–43. Additionally, I question the majority's supposition that it would be unjust to provide a party restitution where it acts "in part to protect its own interest[s]." *Id.* at 30.[1] I also believe there is a better case to be made for the application of traditional contract-law principles to govern rights reservations (as contrasted with the bright-line rule implemented by the majority) than is developed by Appellants in their brief.

1. *See* Robert H. Jerry, II, *The Insurer's Right to Reimbursement of Defense Costs*, 42 Ariz. L. Rev. 13, 55–56 (2000) ("[I]n any contractual relationship, a party performs its contractual duty not only to further its own interests, which is why the party entered into the contract in the first instance, but also to protect its own interests, given that nonperformance of contractual duties exposes the party to remedies for breach. Denying restitution whenever a purpose of a party's actions is to benefit the party's own interests emasculates restitution in all contractual contexts, given that some element of self-benefit always exists whenever a party undertakes to perform contract duties.").

For instance, some courts have construed a reservation-of-rights letter as an implied-in-fact contract,[2] whereby a new agreement is created on the insurer's proposed terms if an insured fails to object to a reservation-of-rights notice and accepts the insurer's defense. *See, e.g., United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 919–21 (6th Cir.2002). Moreover, at least one commentator has advocated for treating a reservation-of-rights letter as an interim settlement of an unliquidated claim, *i.e.*, a claim subject to a good faith dispute, which would allow an insurer to obtain reimbursement of defense costs if, among other things, the insured acquiesces in, and accepts the benefits of, the insurer's performance after receiving a reservation-of-rights notice. The rationale is that, under legal principles governing offer and acceptance, an insured cannot accept the insurer's performance, while simultaneously rejecting a condition the insurer attached to it. *See, e.g.*, Jerry, *supra* note 1, at 62, 69, 71–72. Furthermore, it reasons, at least to me, that a reservation-of-rights notice could be viewed as an accord and satisfaction,[3] particularly where, as here, there appears to be a good-faith dispute as to policy coverage and the insured fails to reject the conditions set forth in the reservation-of-rights letter. *See* 16 SUMM. PA. JUR.2D *Commercial Law* § 8:4 (2010) (describing the general requirements for an accord and satisfaction, which include the same elements for a valid contract, and noting that an "accord and satisfaction may be implied from the circumstances"); *id.* § 8:7 ("The compromise of a good-faith dispute over the respective rights of the parties or the terms of their agreement may constitute sufficient consideration for an accord and satisfaction.").

Ultimately, however, I support the majority's policy judgment that an insurer should be required to ground a reserva-

2. *See* BLACK'S LAW DICTIONARY 144 (3d pocket ed. 2006) (defining an "implied-in-fact contract" as "[a] contract that the parties presumably intended as their tacit understanding, as inferred from their conduct and other circumstances.").

3. *See* RESTATEMENT (SECOND) OF CONTRACTS § 281(1) (1981) ("An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty.").

tion of rights in a specific policy provision. In this regard, the insurer is obviously in the most superior position to anticipate the possibility of a future reservation and to account for it at the time of policy issuance.[4] In addition, having already selected an insurer, the insured faced with a reservation-of-rights letter after the commencement of third-party litigation is at a disadvantage. In such circumstances, I believe there is too great a potential for the insured to simply capitulate to insurer demands in the hopes of avoiding losses. *Cf. Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 516 (Wyo.2000). Although mechanisms may exist to curb or prevent coercive practices by insurers,[5] a policy-based approach facilitates advanced notice and informed decision making by insureds; mitigates against a loss of bargained-for benefits through an insured's inaction or silence; and may alleviate litigation costs associated with coverage disputes. *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 47 (Tex.2008) ("The potentially protracted coverage/reimbursement litigation likely to follow would be at the insured's expense, even though the insured purchased insurance for the very purpose of hedging the risk and expense of future litigation.").

4. *See generally Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 135–36 (Tex.2000) ("Requiring the insurer, rather than the insured, to choose a course of action is appropriate because the insurer is in the business of analyzing and allocating risk and is in the best position to assess the viability of its coverage dispute. On balance, insurers are better positioned to handle this risk, either by drafting policies to specifically provide for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure.") (citations omitted).

5. For instance, the insured could presumably: reject the insurer's reservation-of-rights letter, thereby forcing the insurer to either refuse to defend the claim or continue to defend the insured under the terms of the policy until resolution of the declaratory judgment action, *see, e.g.,* 44 AM.JUR.2D *Insurance* § 1416 (2010); treat the insurer's reservation-of-rights notice as a repudiation of the policy, thus entitling the insured to, *inter alia,* immediately seek remedies for breach of contract, *see* 13 Pa.C.S. § 2610; and/or institute a bad faith action against the insurer, particularly where the insurer is attempting to discharge a claim that is not the subject of a good faith dispute through less than full performance. *See* 42 Pa.C.S. § 8371.