NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3551
_____

WESTPORT INSURANCE CORPORATION

v.

HIPPO FLEMING & PERTILE LAW OFFICES;
CHARLES WAYNE HIPPO, JR.,
                                Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-15-cv-00251)
District Judge: Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 4, 2019

Before: SHWARTZ, SCIRICA, and FUENTES, *Circuit Judges*

(Filed: November 8, 2019)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

The law firm of Hippo Fleming & Pertile ("HFP") and its partner, Charles Wayne Hippo Jr., appeal the District Court's order that Westport Insurance Corporation ("Westport") is not contractually obligated to defend and indemnify them against a disgruntled former client's lawsuit. We will affirm.[1]

## I.

On July 24, 2015, Gregory Morris and Morris Management, Inc. (collectively, "Morris") filed an eleven-count complaint against Hippo and HFP in a Pennsylvania state court. The lawsuit arose from Hippo's prior legal representation of Morris, which included counseling on a variety of real estate deals Morris wished to pursue.

In addition to his legal work in the real estate area, Hippo was also involved with his own real estate investments. He owned substantial interests in Templar Development, LLC and Templar Elmerton, LLC (collectively, "Templar"). In its complaint, Morris alleges that Hippo was disloyal, and that he prioritized Templar's interests. Specifically, Morris alleges Hippo conspired with a Morris executive to divert opportunities away from Morris for Templar's benefit, including by engaging in disloyal actions concerning

---

[1] The District Court had jurisdiction over Westport's Declaratory Judgment Act action under §§ 1332(a), 2201(a) as the parties were diverse at the lawsuit's initiation and the amount in controversy exceeds $75,000. Our jurisdiction is under 28 U.S.C. § 1291 and Federal Rule of Civil Procedure. 54(b), as this is an appeal of a final judgment of one of multiple claims. The District Court entered a final judgment on count I pursuant to Rule 54(b), enabling an appeal. We review the grant of summary judgment *de novo*. *See Burns v. Pa. Dep't of Corrs.*, 642 F.3d 163, 170 (3d Cir. 2011).

an aborted shopping center project. Morris also alleges that Hippo and Templar poached several employees from Morris.

In response to Morris's lawsuit, HFP and Hippo asked their liability insurer, Westport, to defend and indemnify them. Westport ultimately refused and brought the present declaratory judgment action. Westport moved for summary judgment, arguing it is not obligated to defend against the Morris lawsuit based on language in the insurance contract, which excludes coverage for any "claim based upon, arising out of, attributable to or directly or indirectly resulting from [] any Insured's activities" arising from involvement with a company "other than the Named Insured." (hereinafter "Outside Business Exclusion"). App'x 149. HFP and Hippo conceded that counts III-XI of the Morris lawsuit were, in isolation, outside the scope of the insurance policy, but argued that counts I and II were covered by the policy, thus necessitating Westport to defend against all counts.

The District Court granted summary judgment on counts I and II, which alleged legal malpractice by Hippo and breach of the legal services contract, finding "each count in the Underlying suit alleges that Hippo acted to benefit his own business interests to Morris's detriment," and that an analysis of the complaint "leads to the conclusion that the Outside Business Exclusion applies to all counts in the Underlying Suit as a matter of law, therefore excluding coverage." *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 349 F. Supp. 3d 468, 482-83 (W.D. Pa. 2018). The District Court reserved judgment with respect to Westport's other arguments, and it certified for appeal its judgment that Westport was not obliged to defend against the Morris action.

3

## II.

HFP and Hippo argue that Westport is obliged to defend against the Morris action because parts of Morris's complaint are unrelated to Hippo's alleged Templar activities. We hold the District Court correctly interpreted the parties' insurance contract.[2]

Under Pennsylvania law, courts interpret insurance contracts according to their plain meaning. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745-46 (3d Cir. 1999). Although ambiguous insurance contracts must be "construed in favor of the insured," courts must honor a "clear and unambiguous" policy exclusion. *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986) (citation omitted). An insurer must "defend its insured if the factual allegations of the complaint on its face encompass an injury that . . . is potentially" within the policy's scope. *Am. and Foreign Ins. Co. v. Jerry's Sport Ctr, Inc.*, 2 A.3d 526, 541 (Pa. 2010).

As the District Court noted, the Outside Business Exclusion is "broad." *Westport*, 349 F. Supp. 3d at 468. It excludes coverage for "any claim based upon, arising out of, attributable to or directly or indirectly resulting from [] any Insured's activities" arising from Hippo's work with a company "other than [HFP]." App'x 150. If Morris's claims are related to Hippo's Templar activities, directly or *indirectly*, Westport is off the hook.

HFP and Hippo argue that counts I and II of the Morris complaint arise "primarily, if not exclusively, as a result of the alleged breach of the standard of care" attorneys owe their clients, and that there is no "underlying inextricable link" to Hippo's Templar-

---

[2] We review a grant of summary judgment *de novo*. *Green Mach. Corp. v. Zurich-Am. Ins. Grp.*, 313 F.3d 837, 839 (3d Cir. 2002).

4

related activities. Appellant Br. at 38 (emphasis omitted). But an examination of Morris's complaint makes clear that Hippo's Templar-related activities are at the center of both counts. The first sixty-two paragraphs of the complaint, which recount Hippo's alleged pursuit of Templar's best interests at Morris's expense, are incorporated by reference into counts I and II. Count 1 alleges Hippo committed malpractice by violating his duty of loyalty with actions intended to benefit Templar. For example, in paragraph 73, Morris accuses Hippo of "disloyally providing information to [a Morris executive], as well as . . . the Templar and other Hippo[]-related entities, with regard to . . . Hippo's own real estate development and financing that were in competition with [Morris]." App'x 89. Paragraph after paragraph contain factual allegations that Hippo took various actions, intended to benefit Templar at Morris's expense. *See, e.g.*, App'x 92 (alleging Hippo poached Morris's "employees for the purpose of serving Hippo's . . . own financial interests").

Similarly, count II alleges Hippo and HFP violated their contract to provide legal services by various means meant to benefit Hippo's Templar ventures. For example, paragraph 80 in count II alleges Hippo violated the contract by counseling a Morris executive who was conspiring with Hippo to advance Templar's interests. It also alleges Hippo violated the contract by disloyally "presenting real estate development and financing opportunities to Templar Development." App'x 98. As the District Court found, "the allegations in Morris's Complaint straightforwardly characterize the legal malpractice . . . claim[] as resulting from Hippo's self-dealing on behalf of the Templar Entities." *Westport*, 349 F. Supp. 3d at 481.

5

HFP and Hippo also argue that they could be liable for the legal malpractice and breach-of-contract claims in counts I and II based on facts—which they call the "underlying facts"—that would not trigger the Outside Business Exclusion. Appellant Br. at 43. But even if HFP and Hippo are correct that they could be liable for malpractice or breach of contract for reasons unrelated to Templar, the facts alleged *in the Complaint* are inextricably intertwined with Hippo's Templar activities. We must confine our examination to the facts alleged in Morris's complaint. *See Lupu v. Loan City, LLC,* 903 F.3d 382, 390 (3d Cir. 2018) (recognizing "well-established precedent" that "potentially covered claims are 'identified by comparing the four corners of the insurance contract to the four corners of the complaint'" (quoting *Jerry's Sport Ctr.*, 2 A.3d at 541). A duty to defend does not arise merely because it is possible to imagine a set of facts within the insurance contract's coverage that was not pleaded.[3]

In short, we agree with the District Court that, under the insurance contract, counts I and II are "based upon, arising out of, attributable to or directly or indirectly resulting from" Hippo's Templar involvement, App'x 149, so Westport has no duty to defend.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[3] The appellants rely on *Penn America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259 (Pa. Super. Ct. 2011), where the court held that an insurance company had a duty to defend because a set of factual allegations, not actually pleaded, could hypothetically exist where the insured was liable within the insurance policy's scope. Appellant Br. at 23-24. We decline to follow *Peccadillos*, reasoning the Pennsylvania Supreme Court would not adopt its rationale in fidelity to the "four corners" rule. *See Jerry's Sport*, 606 Pa. at 597.